# Barnewall v. Murrell.

*Contest of Probate of Will.*

1. *Admission and withdrawal of illegal evidence.*—Where one party introduces illegal evidence, and afterwards offers to withdraw, and have the jury charged to disregard it, and upon objection by the other party to such withdrawal, the evidence is allowed to remain before the jury, the latter party cannot be heard on error to complain of its original introduction.

2. *Evidence of intention to alter will.*—A will having been duly executed, evidence to show that the testator entertained thoughts of, or contemplated changes, alterations, or revocations thereof, cannot affect the validity of such will, in its integrity, or in any of its parts. Until there is a change, alteration or revocation, in the mode appointed by law, the legal presumption is, that the result of all thought and contemplation, was a determination to adhere to the will as executed.

3. *Special charge to jury; marking "given" or "refused."*—While it is

[Barnewall v. Murrell ]

error for a presiding judge to refuse to mark an instruction asked, "given" or "refused," yet the mere failure of the judge from inadvertence, to endorse the instructions, the party complaining not directing attention to the failure, and taking no exception at the time of its occurrence, will not be heard on error to complain of it.

4. *Construction of re-enacted statutes.*—Re-enacted statutes must receive the known, settled construction which they had received when previously of force; for it must be presumed the legislature intended the adoption of that construction, or they would have varied the words, adapting them to a different intent.

5. *Will written on several detached sheets.*—The validity of an instrument as a will, is unaffected because of the fact that it is composed of, or written on several separate sheets, if they are connected and coherent in sense, by an adaptation of the several parts; if due execution be shown, the signature and attestation will be referred to all sheets, even though they were loose and detached,

6. *Same; presumption as to condition in which found.*—If any theory consistent with the validity of the will can be suggested, which appears to the court to be as probable as the theory on which the argument for the invalidity is based, the will as found, must be maintained.

7. *Proof of execution on contest of will.*—On a contest of the probate of a will, the proponent must produce all the subscribing witnesses, unless in case of death, insanity, absence from the State or incompetency of any one or more of them; in which case evidence of the genuineness of the signature of such witness or witnesses, and of the testator, may be shown to prove their attestation and subscribing.

8. *Same.*—A subscribing witness to a will is not called upon to testify to the attestation of the other witness, but only of the presence of the testator, the testator's signature, and the attestation and subscription by the witness in his presence.

9. *Same; supplying or contradicting evidence of subscribing witness.*—Although the law makes two subscribing witnesses indispensable to the due execution of a will, the testimony of such witnesses is not the only evidence by which the execution can be shown. If from forgetfulness, such witnesses fail to prove formal execution of the will, other evidence is admissible to supply the deficiency; or if the subscribing witnesses all swear that the will was not duly executed, they may be contradicted, and the will supported by other witnesses or circumstances.

10. *Same; declaration of nature of instrument.*—It is not necessary to the due execution of a will that the testator should inform the subscribing witnesses that the instrument attested is his will, or that he should give them any information as to the contents thereof.

11. *Presumptions as to validity of will.*—Where a will propounded for probate, contains blank spaces, and is signed and attested as provided by the statute, and the instrument is all coherent and consistent, and upon a fair reading and construction make an entirety, it will be

presumed to be a complete instrument; and if it was shown that after such execution, changes or alterations had been made therein, in a manner other than that prescribed by the statute, they would be treated as nulities, and the will as it existed at the time of the execution, would be unaffected in validity.

12. *Same.*—When testamentary age, and the due execution of a will is proven, testamentary capacity and sanity of the testator is presumed, and the burden of proving its absence is cast upon whoever may affirm it.

APPEAL from Mobile Probate Court.

Tried before Hon. PRICE WILLIAMS.

The appellant, William Barnewall, propounded for probate, an instrument purporting to be the last will of his deceased wife, Mary E. Barnewall, wherein the proponent was named as executor. Eveline Murrell and others among the next of kin of the said Mary E. Barnewall, contested the validity of the instrument as her last will, on the ground, that the instrument was not duly executed by her. The issue was submitted to a jury, who returned a verdict that the instrument propounded was not the last will and testament of said Mary E. Barnewall, and judgment of the Probate Court was rendered accordingly. The facts and proceedings on the trial are sufficiently shown by the opinion.

OVERALL, BESTOR & GRAY, JOHN E. MITCHELL and MILLER & PRICE, for appellant.—1. The evidence of the witness Lowe to the effect that he found a piece of paper bearing upon a chalice and the melting up of some silver in memory of her daughter Isabel, should have been excluded.—3 Brick. Dig. 426. Proof by the subscribing witnesses is not the only testimony by which the execution of a will can be shown, 38 Ala. 131; 84 Ala. 53. The onus of proving mental incapacity was on contestants—76 Ala. 223; 97 Ala. 731. Though containing blanks, the presumption is that the will was the same when offered for probate, as when executed.—52 Ala. 430, and the fact that it was on separate sheets is immaterial.—Wickoff's Appeal 15 Pa. St. 281; *Martin v. Hamlin,* 4 Strob. Law, 188; *Bond v. Seawell,* 3 Burr, 1773; *Jauncey v. Thorne,* 2 Barb. Chy. 40.

The statute does not require the witnesses to a will to sign in the presence of each other.—*Moore v. Spear,* 80 Ala. 129; *Hoffman v. Hoffman,* 26 Ala. 535. Altera-

tions in a will are inoperative unless made as directed in the statute 61 Md. 478 ; *Law v. Law,* 83 Ala. 436.

GREGORY L. & H. T. SMITH, *contra.*—1. The alleged will was not *subscribed* by the witnesess within the meaning of the statute.—22 A. & E. Encyc. of Law. 782 and note ; *Soward v. Soward,* 1 Duval 126 ; Matter of O'Neil, 91 N. Y. 521 ; Inre Hewitt, 91 N. Y. 294 ; *Charity v. Kelley,* 67 N. Y. 409 ; Williams Exrs. 67. (2.) There was no *animus testandi.—Bolling v. Bolling,* 22 Ala. 828 ; Wms. Ex. (4th Ed) 59, 60 ; *Anturbus & Booth v. Nepean,* 1 Add. 399 ; *Jemsion v. Cook,* 1 Hagg 36 ; *Bayle v. Mayne,* 3 Phill 504 ; *Walker v. Walker,* 1 Merriville Rep. 514-16. (3.) There was no *publication* of the alleged will by Mrs. Barnewall, or what is the same thing, no *attestation* by the witnesses.—*Swift v. Wiley,* 1 B. Mon. 114 ; Matter of Dosnie's will, 42 Wis. 76 ; *Hunt v. Moultrie,* 3 Brad. (N. Y.) 322 ; *Ex parte* Beers 2 Brad. 164 ; *Sweet v. Bordman,* 1 Mass. 261. (4.) The instrument propounded for probate was not sufficiently identified as that which was signed by Mrs. Barnewall.

BRICKELL, C. J.—Error in the admission of illegal or irrelevant evidence is cured by its subsequent withdrawal, and a positve instruction to the jury to disregard it.—1 Brick, Dig. 809, § 88. The contestants proposed to withdraw from the jury the evidence which they had on cross-examination elicited from Mitchell, to the introduction of which the proponent had objected, and had reserved an exception to the overruling of the objection, accompanying the proposal with the request for a specific instruction to the jury to disregard it. The proponent objected, and at his instance, the court overruled the motion and refused the instruction. If the evidence remained before the jury, it was with the consent of the proponent, and he cannot be heard on error to complain of its original introduction. Errors of this character, a party induces a court to commit, or in which he induces a court to persist, when his adversary is seeking by legal methods to correct them, are not available as causes for a reversal of a judgment or a decree.

We are unable to conceive of any theory or reasoning, upon which the evidence of Lowe, that some eighteen

months or two years before the trial, he found on the street on which the testatrix resided, a fragment of note paper bearing the writing of a lady, using some of the expressions employed in the will touching the memorial chalice to her daughter, the testatrix directs to be prepared, was admitted. If the writing was that of the testatrix and was subsequent to the execution of the will, now matter of mere speculation or conjecture, a jury should not be induced or permitted to indulge, it was not relevant, but was foreign to any pertinent hypothesis involved in the issues on which the jury were to render a verdict. The only reasonable, just inference to be drawn from the writing, in any event, was that the testatrix had in her thought and under consideration the directions in reference to the chalice, and may have contemplated changes in them, or possibly a revocation. It is not infrequent, that testators entertain thoughts, or have in contemplation changes, or alterations, or revocations of gifts or directions they may have expressed in their executed wills. The fact that such thoughts have been entertained, or such changes, or alterations, or revocations contemplated, cannot affect the validity of a duly executed will, in its integrity, or in any of its parts. Until there is change, or alteration, or revocation, in the mode appointed by law, the legal presumption is, that the result of all thought and contemplation, was a determination to adhere to the will as executed.—*Slaughter v. Stevens*, 81 Ala. 418.

The statute requires instructions to a jury requested by either party to be in writing, and declares that they must be given or refused in the terms in which they are written ; and that "it is the duty of the judge to write 'given' or 'refused,' as the case may be, on the document and sign his name thereto," &c.—Code, § 2756 ; Pamph. Acts, 1888–89, p. 90. If the presiding judge should refuse on request to express in writing the giving or refusal of instructions, and the party aggrieved should reserve an exception, the error would be cause of reversal, for the judge would have denied a right the statute confers, and deprived the party of the opportunity of revising in an appellate tribunal the correctness or incorrectness of the instructions. But the mere failure of the judge from inadvertence to endorse the instructions, the party complaining not directing attention

[Barnewall v. Murrell.]

to the failure, and taking no exception at the time of its occurrence, will not be heard on errror to complain of it. The party is as much, if not more, in fault than the judge, and it is the diligent, not the supine the law favors. The proponent, as the bill of exceptions recites, requested the court to give four several instructions numbered twelve, fourteen, fifteen and sixteen, and the bill further recites that "the court failed" (not refused), ";to mark any of said charges either 'given,' or 'refused,' and did not give or refuse said charges in writing as asked to do by proponent." There is no foundation for the assignment of error in respect to this matter.

The judge of probate deeming an inspection by this court of the original of the instrument propounded for probate, necessary and proper, has transmitted it in accordance with the 23d Rule of Practice; and it has been examined with much of care. It consists of seventeen sheets of ordinary legal cap paper, to which a cover of similar paper is attached. The first sheet of the writing commences with the usual, formal declaration, that it is the last will and testament of the testatrix, Mary E. Barnewall. The succeeding paragraph, contains the appointment of the husband of the testatrix as executor, without bond. The third paragraph, is a gift to the husband for life, of all the estate real and personal of the testatrix. The fourth paragraph which is commenced on the first page, and continued to the second sheet, the reverse page not being written upon, is a residuary devise and bequest, on the death of her husband, of al the estate, real and personal, of the testatrix, not otherwise disposed of by the instrument, to the Rector, Wardens and Vestry of Christ Church, Mobile. The concluding paragraph of this gift of the residuum is in this form and in these words:

"The said property to the Rector, Wardens and Vestry Christ Church, for said Church, consists of . .
. . . . Feet on water front
½ undivided interest in squares 319–320 .
Orange Grove, bounded by Earle St. Jackson St.
No. 101–103 Commerce Street.
Dwelling house and lot No. 251 Government St.
This latter I will to be kept in perpetuity, never to be sold, never to be called by any other than my father's name, be the use what it may.

The furniture of said house not specified below to be part and parcel of said house

Bonds valued at

Securities valued at

The reverse page commences : ''Fearing there may be a misunderstanding of what I have given different ones, I write here, what I want left in the house, to go with it as part and parcel thereof;'' followed by an enumeration of various articles of personal property, consisting of a library, pictures, and household furniture in different apartments of the dwelling house, occupying the entire page. The third sheet consists of gifts of personal property in the dwelling house, to the sister of testatrix, Josephine McCartney ; and of a gift to her for life of Pew 98 in Christ church. The fourth sheet consists of gifts to Virginia E. Mitchell, the sister of testatrix ; the reverse page being without writing. The fifth sheet contains three paragraphs. The first is a gift of a carriage and horses to Nina E. Mitchell, the sister of testatrix. Several lines intervening on which there is no writing, the second paragraph is a bequest of one thousand dollars to Edward C. Emanuel, the brother of testatrix. The third paragraph is in these words : "The pictures not mentioned to be divided between my two sisters." The sixth page contains two paragraphs. The first is a gift of described personal property, to Mary B. Mitchell, the niece of testatrix. Several lines without writing intervening, this paragraph is on the last lines of the page : "I did give to my sister, Josephine McCartney, one sideboard or etajere in the dining room, but this I revoke here, not wishing to scratch it out from her list." The seventh page consists of two paragraphs ; the first is a gift of described personal property to Effie Murrell, a niece of testatrix, the description commencing with : Bond face value of————.'' Several lines intervening, on which there is no writing, is a gift to Mary B. Murrell, a niece of testatrix, of described personal property, the description commencing : "Bond face value of——'' The eighth sheet consists of two paragraphs. The first is a gift to Isabelle Shields of described personal property, of which is a "Bond face value, five hundred dollars ;'' the words five hundred dollars, written with pencil. The second paragraph, several blank lines intervening, is in these words : "The

head of Christ, two ivories of crucifixion, in my room, the map of Switzerland in the pantry, to Dr. J. S. Tucker." The ninth sheet consists of two paragraphs. The first is a gift of designated articles of wearing apparel and of jewelry, to some of the friends of testatrix, as it is expressed: "Simple tokens of the love that I have borne them many years." Several unwritten lines intervening, the second paragraph is a gift of wearing apparel, of pictures, and of a China Epergne, to Mary Louise Mitchell. The tenth sheet consists of gifts of annuities and of pecuniary legacies, to several different persons, evidently servants of the testatrix. The eleventh sheet consists of gifts to particular persons of various articles of personal property, chiefly of household furniture, in different apartments or rooms of the dwelling house. The concluding paragraph is in these words: "I did give these two sets of furniture to John & Tom Mitchell, respectively, but I revoke it here, instead of scratching it from above; the boys will all four of them inherit from their mothers." The blank sheet to which we have referred, then intervenes. The twelfth sheet contains two paragraphs. The first is a gift to the Rector, Wardens and Vestry of Christ Church, of all the silver of the testatrix, "none of Mother's;" of all her jewelry and diamonds, for purposes expressed, with instructions for the preparation of a memorial chalice to her daughter, Isabel Kennedy. The second paragraph is in these words: "*Note*, that all of mother's silver and plate, after the exchange with Mrs. Mitchell has been made, shall be divided between the two sisters, that which I have specified is of course excepted." The thirteenth sheet contains a gift of pictures to the Rector, Wardens and Vestry of Christ Church, in its first paragraph. The second paragraph is in these words: "Note particularly, that I positively and expressly will that *nothing*, *nothing*, that I give is ever to be sold, or given away." The fourteenth sheet has two paragraphs. The first is the expression of the hope of the testatrix, that none of her relations would take offense at the will, or express discontent therewith; and of reasons why they should not. The second written at the close of the page is in these words: "In the donation to Mrs. McCartney and Mrs. Mitchell, I myself erased pier and gave each of them two mantel glasses instead of one

pier and one mantel glass each; as taking down the pier
glasses would injure the looks of the parlor cornices."
The fifteenth sheet has a single paragraph near its centre,
which is the appointment of executors in the place of
her husband, if any cause prevented him from acting.
The sixteenth sheet contains an injunction to the Rector,
Wardens and Vestry of Christ Church, to expend an-
nually from the income of the property given them, the
sum of twenty dollars for the care of the Emanuel lot in
the cemetery. Underneath is written these words:
"Given under my hand this eighth day of April 1892,"
to which is affixed the signature of "Mary E. Barne-
wall." Below is an attestation clause, to which is af-
fixed the names, Murray Wheeler, Daniel McNeill and
Henry Frolichstein, as witnesses.

We are induced to this extended description of the
the original instrument, because it is insisted that on its
face, it is an incomplete, unfinished testamentary paper,
intended by the testatrix only as preliminary, or pre-
paratory to the making of a complete testamentary dis-
position of her estate; and that it bears internal evi-
dence of alterations or additions made after its alleged
execution and attestation, which vitiate it, because, as is
said, of the impossibility of detecting and distinguishing
them from that which was written at the time of the
execution.

The bill of exceptions purports to recite all the evi-
dence which was introduced on the trial, and it is with-
out conflict. McNeill having died, and Frolichstein be-
ing without the State, Wheeler only of the subscribing
witnesses was produced. He testified that he knew the
testatrix, and witnessed her signature to the instrument
propounded for probate. She signed it in his presence,
and he signed his name thereto in her presence, in the
office of the proponent; he was there at the request of
the proponent to witness the signing. Presumed Mc-
Neill and Frolichstein were there, but could not remem-
ber clearly. On cross-examination he stated: "I do not
remember what was said after I got to Mr. Barnewall's
office. I do not remember clearly about Mr. Frolich-
stein or Mr. McNeill being there, no more than we all
signed together, and I presume they were there. I do
not remember clearly about their being there, nor do I
remember what Mrs. Barnewall told me relative to the

instrument. I did not look through the papers, and don't know whether all the pieces of paper were there or not.''

The proponent testified that the testatrix was his wife. That she came to his office early in April, 1892 ; said she wanted to sign her will, and requested him to call in witnesses. She unrolled the instrument now propounded ; turned over the leaves until she reached the attestation clause, and he pointed out where she should sign, and where the witnesses should sign. He called in as witnesses, Wheeler, McNeill and Frolichstein ; and she signed the instrument in their presence, and they signed their names in her presence. At the time of the signing, the papers were fastened together ; they were bound together at the top. As she turned over the leaves, the blanks appeared as they are now ; the instrument is in the handwriting of his wife, every part of it. The outside covering was loose, and remained loose until the 23d day of June, 1894, a few days before the death of the testatrix, when he attached it to the instrument with eyelets. Sometime in February or March, 1892, at the request of the testatrix, he gave her legal cap paper on which to write her will. Did not know how many sheets he gave her ; he did not give her loose sheets but uniform paper. First read the will on 23d June, 1894, had seen it previously. Saw it in the latter part of September, 1893, when his wife made a visit to Chicago. Found it lying on his bureau, and opened it to see what it was. Recognized the outside covering which was on it the day it was signed. Read the heading, saw it was the will of his wife ; turned to the attestation clause, and that convinced him it was the will signed in his office, in his presence. Knew pretty well its contents from what his wife ''had spread abroad in the family.''

The genuineness of the signatures of McNeill and Frolichstein was proved.

John K. Mitchell, a nephew of the testatrix, testified, that he saw the paper propounded, in the possession of the testatrix, in the latter part of March or early in April, 1892, before its signing and attestation. That she produced it from her writing desk, at her own house, rolled as the instrument was on the trial, and said that she wished him "to look at that will and see whether certain clauses in it are right.'' Taking the paper from her

hand, he unrolled it, and asked ''what clauses she wished him to look at;'' she answered, "Look at that clause in regard to the property left to the church, and see if that is right." She pointed it out, and he read it, and said to her, his recollection was that the corporate name of the church was the Rector, Wardens and Vestry of Christ Church, and if his recollection was right, the devise was right. He said to her, that he had better look at the attestation clause and see if that was right. He turned over each page, glancing at them carelessly, getting a general idea of the contents, discovering the blank spaces as they now appear, and examining the attestation clause, said to her it was right. The instrument he then saw, like the instrument propounded, was in the handwriting of the testatrix; was written on legal cap paper, having numerous blank spaces, and one or two entirely blank sheets. The sheets were fastened or sewed together with black threads, the threads hanging over, as they are now. The covering was not then attached, but was loose, and there was not, as now, eyelets attaching it. Upon this evidence, and the manner in which the instrument is constructed, arise the questions upon which depend the correctness or incorrectness of the rulings of the court below, in the giving or refusal of instructions to the jury.

The present statute relating to wills, and to their execution and attestation, declares that except in certain specified cases, no will is effectual to pass real or personal property, "unless the same is in writing, signed by the testator or by some person in his presence and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."—Code, § 1966. The predecessor of the statute, borrowed from the English Statute of Frauds, 29 Charles 2, c. 3, § 5, related exclusively to devises of real estate, and authorizing persons of the age of twenty-one years, to devise real estate by last will and testament in writing;'' *provided*, that such last will and testament is signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested by three or more respectable witnesses, subscribing their names thereto in the presence of such devisor."—Clay's Dig. 596, § 1. By the common law, wills of personal property were valid and operative,

though not written or signed by the testator, or attested by witnesses, if written in accordance with his instructions; and the rule of the common law prevailed here, until the adoption of the Code of 1852, in which the present statute was embodied as section 1611.—*McGrew v. McGrew*, 1 S. & P. 30; *Shields v. Alston* 4 Ala. 248; *Couch v. Couch*, 7 Ala. 519; *Hilliard v. Hilliard*, 10 Ala. 982; *Ex parte Henry*, 24 Ala. 627; *Powell v. Powell*, 30 Ala. 697. Beside mere changes of verbiage, not affecting the sense and meaning, the essential difference between the present and the pre-existing statute, is the reduction of the minimum of necessary attesting witnesses from three to two, and the subjection of wills of personal property to the mode of execution and attestation, which had been necessary only to devises of land. The purposes of the present and of the former statute are identical; and the controlling words and phrases employed in each statute, are the same. The will must be in writing; it must be "*signed* by the testator, or by some person in his presence and by his direction;" must be "attested by at least two or more witnesses, who must subscribe their names thereto in the presence of the testator," were the requirements of the former, and are the requirements of the present statute.

It is an elementary rule of statutory construction, that reenacted statutes must receive the known, settled construction which they had received when previously of force; for it must be presumed the legislature intended the adoption of that construction, or they would have varied the words, adapting them to a different intent. Sutherland Stat. Con., § 256. The rule has been of frequent application to the Code; in its construction, uniformly, the legislature has been presumed to have known the settled construction of statutes, of which there was a substantial reenactment, and to have intended the adoption of such construction.—1 Brick. Dig. 349, § 2. And to this rule, the statute of wills has been subjected; and in so far as it may be, a substantial reenactment of its predecessor, which was borrowed from the English Statute of Frauds, the known construction the English statute had received prior to its enactment here, has been followed.—*Armstrong v. Armstrong*, 29 Ala. 538; *Bailey v. Bailey*, 35 Ala. 687. The rule is founded in reason; when words have a known signification, when

[Barnewall v. Murrell.]

standing in a particular relation, or as applied to a particular subject-matter, the signification is not varied because of their translation from one statute to another; the statutes having a common purpose, the same relation, and subject-matter. The particular questions now involved, deemed of chief consequence, may not have been the matter of decision in this court, but in their determination, this rule of statutory construction must be observed. That which has been declared a valid, complete will, must now be so declared.

It has long been settled, that a will may be written on several sheets of paper, as expressed in Schouler on Wills, § 284, "incorporated together in sense as one instrument." In 1 Williams on Executors, 130, it is said by the author: "No provision is contained in the act as to wills written on several sheets, and, therefore, in this respect also, the decisions on the statute of frauds appear to be authorities; and they have established, that if a will is written on several, or separate sheets, and the last alone be attested, the whole will is well executed, provided the whole be in the room, and although a part may not have been seen by the witnesses; and that it is a question for the jury, whether all the papers constituting the will were in the room; and further, that the presumption is in the affirmative." In *Bond v. Sewell*, 3 Burrows, 1773, the testator had written his will on two separate sheets of paper, and a codicil on a third. All the sheets were shown to one of the witnesses; the two other witnesses never saw the first sheet, and it was not upon the table at the time of their attestation. Lord Mansfield held, that the jury ought to have been instructed to presume that the first sheet was in the room at the time of the attestation. In *Wikoff's Appeal*, 15 Penn. St. 290, it was said by Gibson, C. J.: "It is a rudimental principle, that a will may be made on distinct papers, as was held in the Earl of Essex case, cited 1 Shower, 169. It is sufficient that they are connected by their internal sense, by coherence or adaptation of parts." The rule was applied by the Supreme Court of Tennessee, in *Gass v. Gass*, 3 Hump. 278; and by the Supreme Court of Massachusetts, in *Ela v. Edwards*, 16 Gray, 99. We are not aware of any authorities in disputation of the rule; it is but an extension to the section of the statute of frauds relating to wills, of the rule applied to other sec-

tions relating to promises, agreements, or contracts, offensive to its provisions, unless in writing and signed by the party to be charged. The form of the promise, or agreement, or contract, is not material; and it may be collected from several papers, or writings, either of which is signed by the party to be charged, the mutual relation of the writings appearing on their face—Browne on Statute of Frauds, § 344, et seq; *Jenkins v. Harrison*, 66 Ala. 345. The validity of the instrument as a will, is unaffected because of the fact that it is composed of, or written on several separate sheets if they are connected and coherent in sense, and by an adaptation of the several parts, a matter to which we will hereafter advert.

The instrument, so far as it is depositive and testamentary, terminates on the last sheet, to which is affixed the signature of the testatrix, and the attestation of the witnesses. If due execution is shown; due execution including the signing by the testatrix and the attestation of the witnesses, the signature and attestation would suffice for all the sheets composing the instrument though they were loose and detached. It is but one signature, and one attestation, the statute contemplates; and when the signature and attestation are found in the usual, natural place, they must be treated as unmeaning, vain and futile, or referred to all the sheets containing writing, which by their own internal sense, coherency and consistency, make the instrument in its entirety. Shouler on Wills, §§ 314-5, 337; 15 Jarman on Wills, 79; *Martin v. Hamlin*, 4 Strohb, 188; *Ela v- Edwards*, 16 Gray 91; *Wikoff's Appeal*, 15 Penn. St. 281.

All the sheets of the instrument, as produced, are bound and fastened together. If the evidence was not clear and undisputed, that they were so bound and fastened at the time of the signing and attestation, a just and legal presumption would arise, that at that time, such was the fact and such the condition of the instrument.—Shouler on Wills, § 284, 1 Jarman on Wills, 79-84; *Rees v. Rees*, L. R. 3 P. & D. 84. In this case, Sir J. Hennen, considering what presumption arises from the plight and condition in which a testamentary paper is found after the death of the testator, observed: "If any theory consistent with the validity of the will can be suggested, which appears to the court to be as probable

as the theory on which the argument for the invalidity is based, the will as found must be maintained." This is but an application to testamentary papers of the general principle applicable to contracts; presumptions are indulged to support, not to defeat them. The instrument propounded, was written wholly by the hand of the testatrix; and it bears internal evidence that it was the result of much thought and deliberation. She knew that an indispensable requisite to its validity was her signature, and the attestation of witnesses. She knew it was written on several, and separate sheets, some of them containing but brief paragraphs. What more natural, than that upon the final act, which alone could render the instrument valid and operative, she should bind and fasten the sheets, incorporating them physically, as all the writing, in the language quoted from Shouler, ·"incorporates them together in sense as one instrument." The evidence of Mitchell, and of the proponent, which is undisputed, shows that the presumption now corresponds to the actual fact. This evidence has already been recited, and it is unnecessary to repeat it.

The next inquiry, is, whether due execution—the signing of the instrument by the testatrix, and the attestation by the subscribing witnesses, is shown by the requisite degree of evidence. The burden of proving these facts rested on the proponent. The rule of the common law prevailing in this State, as declared in *Bowling v. Bowling*, 8 Ala. 538, was, that on a contest in the court of probate of the validity of a will purporting to pass lands, the proponent was bound to call all the subscribing witnesses. But if any of these witnesses had become incompetent, or were dead, or without the State and of consequence without the jurisdiction of the court, the proponent was relieved from the duty of calling them; and could satisfy the burden resting upon him in this respect by making proof of their handwriting. Since, the statute as we have seen, requires that wills of personal, or of real and personal property, must be in writing and executed with the same formalities. And the statute has provided, that all wills in writing, must be proved by one or more of the subscribing witnesses; or if they be dead, insane, or out of the State, or have become incompetent since their attestation, then by proof of the handwriting of the testator, and of one of the subscribing

witnesses.—Code, § 1979. We do not read the statute, as is suggested in the argument of the counsel for the appellees, as authorizing proof of the handwriting of the testator and one of the subscribing witnesses, only in the event of the death, insanity, absence from the State, or incompetency of *all* the subscribing witnesses. The statute was intended to prescribe, and prescribes a definite rule, regulating the admission of that which may be appropriately termed secondary evidence, when the primary evidence of the execution of wills is not attainable. The proper construction of its words, and their real sense and meaning is, that if any one or more of the subscribing witnesses, because of the events or the disabilities mentioned, cannot be produced, there may be a resort to the secondary evidence for which it provides, the equivalent in degree of the unattainable primary evidence. This was in effect, the decision in *Snider v. Burks*, 84 Ala. 53, though there was not particular reference to the statute. McNeill having died, and Frohlichstein being without the State, proof of the genuineness of their signatures and of the signature of the testatrix, was evidence of their attestation and subscribing.

Wheeler, the subscribing witness produced, proves that the instrument was signed by the testatrix in his presence, and that in her presence he subscribed his name to the attestation clause. It may be, he is not distinct in his recollection of the presence of McNeill and Frohlichstein, or of their attestation and subscribing. It is not of their presence, attestation and subscribing, the statute contemplates he shall testify, but of the presence of the testatrix, and her signature, and of his attestation and subscribing in her presence.—*Woodcock v. McDonald*, 30 Ala. 411; *Hoffman v. Hoffman*, 26 Ala. 535; *Moore v. Spier*, 80 Ala. 129. If his evidence be capable of the construction, that he does not affirm that the instrument propounded is that which he attested and subscribed, the identity is fully proved by the proponent, who was present at the execution. It is undoubted law, that any deficiency in the evidence of subscribing witnesses as to the due execution or identity of the instrument, may be supplied by the evidence of other witnesses. If this was not true, the validity of wills would often depend, not upon the existence of facts rendering

them valid, but upon the retentiveness of the memory of the subscribing witnesses.—*Hall v. Hall*, 38 Ala. 131. As was said in this case: ''The law makes two sub-scribing witnesses indispensable to the formal execution of a will; but it by no means follows, that the testimony of these witnesses is the only evidence by which the due execution of the will can be established. On the contrary, it is laid down as undoubted law, that if, from forgetfulness, the subscribing witnesses should fail to prove the formal execution of the will, other evidence is admissible to supply the deficiency; or, if the subscribing witnesses all swear that the will was not duly executed, they may be contradicted, and the will supported by other witnesses or by circumstances. See also *Dewey v. Dewey*, 1 Metc. 349.

The statute does not require that a testator should inform the subscribing witnesses, that the instrument they are subscribing is his will, or give them any information of its contents.—1 Jarman on Wills, 80; 2 Green. Ev. 675; *Leverett v. Carlisle*, 19 Ala. 80; *Garrett v. Heflin*, 98 Ala. 617. Whether the testatrix made to the subscribing witnesses any declaration, or gave them any notice or information that the instrument was her will, is not material to the validity and operation of the instrument, or to the sufficiency of its due execution. The evidence was full and complete as to the due execution of the instrument; due execution including as we have said the signing by the testatrix, and the attestation and subscribing by the witnesses.

The next inquiry which is presented is, whether the instrument is not to be taken as an unfinished and incomplete testamentary paper, to the validity of which, extrinsic evidence that the testatrix intended it to take effect, as it now stands, is essential. The argument in support of the affirmative of this inquiry is drawn principally, if not exclusively, from the rules applied to papers operating or intended to operate as testamentary dispositions of personal property; when the common law prevailed and such dispositions were valid, though not signed by the testator, or attested by witnesses. The case of *Boling v. Boling*, 22 Ala. 826, occurring before the present statute became operative on which there is now much of reliance in support of the argument of the appellees, is an example. The effort was to obtain pro-

bate of an unsigned and unattested instrument, having
a formal attestation clause, devising real estate and be-
queathing personal property, as a will of personal prop-
erty only. The court held that the instrument was on
its face unfinished, incomplete; that the testator con-
templated its signing and attestation, and without ex-
trinsic evidence, that he intended it to take effect as to
personal property, unsigned and unattested, probate of
it could not be obtained. Not being attested, of course,
it could not pass real estate, without contravening the
requirements of the statute. In the course of the opin-
ion, treating solely of incomplete or unfinished testa-
mentary dispositions of personal property, the court
quotes a sentence from Jarman on Wills, which is in sub-
stance the second instruction given by the court of pro-
bate at the instance of the contestants. The sentence is
in these words: "The presumption is always against a
paper which bears self-evident marks of being unfin-
ished; and it behooves those asserting its testamentary
character distinctly to show, either that the deceased in-
tended the paper in its actual condition to operate as his
will, or that he was prevented by involuntary accident
from completing it." It was doubtless one of the pur-
poses of the statute, in requiring that testamentary dis-
positions of personal property should be executed with
the same formalities required in devises of land, to re-
move them from the doubt and uncertainty in this respect,
which attended them while the rule of the common law
prevailed. There is no other mode of giving a valid
expression to the *animus testandi*, than that which the
statute prescribes. Whatever forms the expression may
assume; whatever solemnity may accompany it; the
statute declares it ineffectual, unless the formalities it
prescribes are observed. When these formalities are
observed, if the writing be testamentary—if it imports a
posthumous destination of property,—the statute in itself
and of itself attaches, and conclusively attaches the *ani-
mus testandi*. The requisition of extrinsic or additional
evidence of its existence, is to add to the requirements
of the statute; and to receive such evidence to repel the
existence of the intent, would be to receive evidence
against the statute.

The instrument was written by the testatrix. It bears
internal evidence, as we have said, that it was the result

[Barnewall v. Murrell.]

of much thought and deliberation. And it bears evidence that it was not written at one time, continuously, as it would have been written by a scrivener instructed to write from memoranda. The testatrix was the author and the scrivener. Of her own volition, after having written to a formal conclusion, she signs it and calls witnesses to attest her signature, and they do attest. Every formality the statute requires, is observed, and these formalities it is contemplated shall attend only final and complete testamentary acts. In a recent case, it was said by the Supreme Court of Illinois: "As regards the allegation of the bill that the will was never completed to the satisfaction of the testatrix, it is conclusively shown that the will was signed and executed by her, and attested by witnesses, in the mode prescribed by law, and this is, in law, conclusive evidence of the fact that it was completed to her satisfaction."—*Taylor. v. Cox*, 153, Ill., 224. In *Waller v. Waller*, 1 Grattan, 454; s. c, 42 Am. Dec. 564, it was said by the Court of Appeals of Virginia: "No man publishes an instrument as his last will and testament, and calls on witnesses to attest the fact, until he has completed the act. The attestation must be annexed or subscribed to a complete instrument, and to which, when subscribed, no additions can be made. To the act itself the law attaches testamentary intent, that it is a concluded instrument, and if the party is under no restraint, acts freely, and is of sane mind, no further proof is required to sustain the instrument as a will; and no proof other than a revocation in the mode prescribed, will be received to show a change of testamentary intent." In *Sewell v. Singluff*, 57 Md. 537, the court speaking of the finality and conclusiveness of a testamentary act, said: "The law requires her do nothing more than she did do, to make the will perfect and she could have done nothing more. No further act or declaration was required of her. She possessed undoubted testamentary capacity, and the *animus testandi*, and complied literally with the forms required by our statute, by reducing her wishes to writing, signing, sealing and declaring it to be her last will in the presence of three witnesses; and when all this was done, the act was a complete and finished one. If under these circumstances, the paper in question was not her last will and testament, it is difficult to

[Barnewall v. Murrell.]

describe what it was. It was either her last will and testament, or it was a nullity, and entirely void." When a sane testator, not subject to coercion or restraint, intentionally executes, with the formalities required by the statute, a writing which in form and substance is testamentary, the writing of itself imports, and conclusively imports the *animus testandi*, i. e., the mind to dispose, the firm and advised determination to make a testament, closing all inquiry as to the existence and manifestation of the intent.

While this is admitted to be true of all testamentary papers, which do not bear upon their face evidence of being unfinished and incomplete, it is vigorously argued, that it is not true, and cannot be true of a paper like the present, which, it is said, contains "unnecessary and unreasonable blank spaces, sufficient to enable it to be changed and added to after execution, in such manner that the additions will not be distinguishable from the original text, and indeed so written for that purpose." The argument overlooks the true inquiry, which is not as to the completeness of the paper, but as to the finality of the intent and purpose of the testatrix, manifested by the observance of the formalities of execution required by the statute. The rule is well settled that a will is not invalid by reason of having blank spaces left in the body of it.—1 Jarman, 18; *Harris v. Pou*, 39 Md. 535. In *Croemby v. Gibbons*, 1 Robertson Ecc. 745, the subject was considered under the present English statute which requires that a will shall be 'signed at the foot or end thereof' by the testator, a requirement not made by our statute, though it is the fact in relation to the present instrument. The court said: "The statute directs that a will shall be signed "at the foot or end thereof." In this respect the statute has been carried into effect in the present instance to the letter, as well as in the spirit. The object is to prevent a space being left between the foot or end of the will and the signature of the testator, so as to admit of additions being made after execution. In regard however to blank spaces in *the body* of the will, the statute is silent. Were I to introduce that, as a circumstance to work a nullity to the will, I should have occasion to consider what would constitute a blank space, and in some instances that might be an exceedingly nice question Here the blanks

are accounted for; but independent of that, I do not think I should be justified, on the strict principles of interpretation, to hold that to be a nullity, which appears not to be so rendered on the face of the statute. There are no words in the act to hinder a space being left blank in the body of a will, and I cannot undertake, though undoubtedly in some instances mischief may arise, to introduce a provision not to be found in the statute. The evil, if any, must be remedied by the legislature. "The case of *Soward v. Soward*, 1 Duvall (Ky.) 124, upon which so much reliance is placed by the counsel for appellees, is not in conflict with *Croemby v. Gibsons. supra*, but is in harmony with it, referring to unnecessary and unreasonable blank spaces intervening between the conclusion of the will and the subscription by the testator or witnesses, and not to blank spaces in the body of the will. The case is in construction of the statute of Kentucky, variant from our statute, and from its original, the English Statute of Frauds, and holds that attesting witnesses must subscribe at the foot or end of the instrument, a conclusion different from that reached by Lord Campbell, in *Roberts v. Phillips*, 4 Ell. & Black, 450.

The blank spaces in the body of this instrument, are readily accounted for, if account was necessary, or now within the scope of legitimate inquiry. The instrument is composed of numerous paragraphs, obviously written not continuously, but at different times in the process of its composition, until its completion. Until its completion, it was deliberative and reflective, not expressive of the final thought and will of the testatrix. When the gift of the residuum to the Church was first written, the thought of the testatrix may have been that she would describe all the real estate of which the residuum consisted; as it may have been that she would declare the value of the bonds and securities of which it consisted. But when the writing was completed, it must have occurred to her that as she had made no specific gift or devise of real estate, all her real estate would fall into the residuum, and that of consequence the filling of the blank was useless; as all would pass without or with an accurate description of it. And so in reference to the bonds and securities of which she had made but a single bequest to another; it must have occurred to her that

all, whether their value was, or was not expressed, with the exception of the one otherwise bequeathed, would fall into the residuum. In reference to the blanks occurring in the separate gifts to Effie and Mary Murrell, "Bond face value of——— ——————," all that can be reasonably inferred is, that when these gifts were first written, the testatrix had in contemplation the inclusion of bonds, the value of which she had not determined. The final conclusion was, that the bequest should not include bonds, or she would have filled the blanks, declaring the value, as it is apparent she filled a similar blank in the bequest to Isabelle Shields. It is vain to inquire and speculate why the instrument was not written continuously, or why there is, if there be a want of consecutiveness apparent on its face. Or why there is more writing on some pages, or sheets, than others; or why there is on one page but a single paragraph, the appointment of executors to succeed her husband. Or, why one entire blank sheet was fastened together with the sheets containing the writing; more probably merely inadvertent, than intentional: The writing on several and separate sheets, the law permits. And when as is true of this instrument, all the writing is connected by its internal sense; all is coherent and consistent, and upon a fair reading and construction make an entirety, it must take effect according to the plain, unmistakable intent of the testatrix; it is as valid and operative, as if some other form or mode had been pursued in its preparation. Notwithstanding the blank spaces in the gift of the residuum, and in the bequests to Effie and Mary Murrell, to which we have referred, if the instrument had been written consecutively, no other than the ordinary spaces intervening between the several paragraphs, it would be unassailable even according to the argument now pressed. Why should it have been written in that form—the law does not require it; and the numerous instances to be found in the books, of wills written on several, separate sheets which were sustained, show that such manner of writing them is not without precedent. And here it must be said, though this instrument in the course of its preparation, was written on several sheets, before its execution, the testatrix with care connected and attached them together. The stress of the argument against the

[Barnewall v. Murrell.]

validity of the instrument, is, that the manner in which
it is constructed, affords opportunity for changes, alter-
ations, or additions, after execution, which could not be
discovered and distinguished, and that such must have
been the purpose of the testatrix. With much of thought
and deliberation, carefully and intelligently, she had
written the instrument, signed it, and procured its at-
testation, and why suspect or conjecture that she had
any purpose to change or alter it finally, or in any
respect, not conforming to the law? In its last analysis,
the argument is directed against the law which sustains
the writing of wills on separate or several sheets, and
does not nullify them because blank spaces are found in
the body of them. Instead of indulging suspicion or
conjecture to destroy the validity of wills, the courts are
bound to support them against mere suspicion or con-
jecture; bound to support them, when any theory or hy-
pothesis maintaining them, is as probable as that which
is suggested to defeat them. The great, controlling
purpose of the testatrix was not to die intestate; was to
dispose of all her property by this instrument. This is
manifested by the universality of the gift to the husband
for life; by the gift on his death of the residuum to the
church; by the minute specific bequests to her relatives
and friends, of pictures and other like articles, intended
doubtless, as mementoes, descending to articles of
wearing apparel. In the presence of this purpose and
of these gifts there can be no reason to apprehend that
she may have intended other or further bequests. There
is no vitiating want of form or regularity in the in-
strument; it has been executed in strict conformity to
the statute; the sanity of the testatrix, and her freedom
from all constraint, or undue influence, is not matter of
controversy; and if it were necessary to resort to pre-
sumptions, they would be raised to maintain, not to
destroy the instrument, defeating the plainly declared
purposes of the testatrix.

There is much discussion rather of the possibility,
than of the existence of alterations or additions to the in-
strument, made after execution, and not distinguishable
from the text as it existed at the time of execution.
We have not discovered on an inspection of the instru-
ment, any indication of such alterations or additions.
If they exist, they would not vitiate the instrument;

the alterations, or additions, not made as the statute re-
quires, would be mere nullities, and the will as it existed
at the time of execution would be unaffected in validity.
Schouler of Wills, § 434; *Wheeler v. Bent*, 7 Pick. 61;
*Jackson v. Holloway*, 7 Johns. 394; *Matter of Prescott*, 4
Redfield, 178; *Gardner v. Gardner*, 65 N. H. 230.

The questions we have decided, are all which it is
probable will arise on another trial, rendering unneces-
sary any extended consideration of the instructions
given, or refused, to which exceptions were reserved.
According to the views, we have expressed, the in-
structions given at the instance of the contestants,
numbered two, three, four, five, and six, are erroneous
and should have been refused. The first instruction
given at the instance of the contestants, is erroneous in
one respect. If it had asserted that on the proponent,
rested the burden of proving the facts on which the juris-
diction of the court depended, i. e., in this particular
case, the testamentary age of the testatrix, her death,
and her inhabitancy of the county of Mobile at the time
of her death; and further, the due execution of the
instrument, it would have been free from objection.
But the instruction proceeds to assert in most general
terms, that on the proponent rested the burden of
proving every fact essential to the validity of the will.
Testamentary capacity, sanity, is of the essence of the
validity of every testamentary disposition. Yet, when
testamentary age and due execution are shown, it is pre-
sumed, and the burden of proving its absence is cast
upon whoever may affirm it.—*Stubbs v. Houston*, 33 Ala.
555. Without this explanation, the immediate tendency
of the instruction was to mislead the jury.

The testamentary age of the testatrix and her inhabi-
tancy of the county of Mobile at the time of her death,
the facts on which the jurisdiction to take probate of
the will depended, were not matters of controversy;
they were shown affirmatively. It would have been of
consequence the duty of court below to have given the
general affirmative instruction requested by the propo-
nent, if that instruction had not referred to the jury the
determination of the purely legal question of what facts
were necessary to establish the signing and attestation
of the will.—*Riley v. Riley*, 36 Ala. 495. Several of the
special instructions requested by the proponent, and re-

fused, should have been given, but the opinion we have just expressed renders it unnecessary to point them out.

The decree of the court of probate is reversed, and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.