94 So.2d 228

## Jodie GADDIS

### v.

### STATE.

### 5 Div. 491.

Court of Appeals of Alabama.

March 26, 1957.

Robt. J. Teel, Rockford, for appellant.

John Patterson, Atty. Gen., and Geo. Young, Asst. Atty. Gen., for State.

HARWOOD, Presiding Judge.

Under an indictment charging murder in the second degree, this appellant's jury trial resulted in a verdict and judgment of guilty of manslaughter in the first degree.

The evidence presented by the State tended to show that about 8:00 P. M. Mildred Hand, widow of the deceased, and Safronia Kelley, James Meadows, and the appellant were standing in a country road in Coosa County talking.

According to Mildred Hand the deceased approached the group, and he and appellant started talking. There had been no trouble. She did not see or hear the deceased slap or hit the appellant, and the first thing she knew the appellant had shot the deceased with a twenty gauge shotgun. At the time the appellant and deceased were about as far apart "as from here to that lamp (indicating)."

As to the positions of the other parties, the witness placed them by such expressions as "standing right there (indicating)," or "standing along there (indicating)." Apparently these positions were in reference to the positions occupied by persons or things in the court room.

On cross examination this witness testified that she did not know "for sure exactly how far apart" appellant and deceased were when the shot was fired, that the night was dark and she was just guessing the distance.

On redirect examination she further testified that after the shot was fired she ran up to appellant and caught hold of the gun, and that deceased then grabbed the gun.

Both turned it loose, and she helped deceased to the ground.

Safronia Kelley, a witness for the State, testified that when the deceased approached he announced: "I heard every word you said and no need of running and he come up and slapped Jodie and staggered Jodie backwards and the gun went off and me and James run across the field."

Immediately after he was slapped the appellant "had the gun like that (indicating); that is where it was when I saw the barrel of the gun leave the ground; he had the barrel of the gun pointing to the— he didn't have it up this way (indicating); it was down this way (indicating)."

It was at this point that this witness fled the scene.

James Meadows' testimony was of the same tenor as that of Safronia Kelley, except that he started running when deceased slapped appellant and he did not see appellant raise the gun.

In his own behalf the appellant testified that when deceased approached he stated: "God damn you, no need of running," and then the deceased slapped him down, knocking out his teeth. As he fell the deceased grabbed the gun barrel and started jerking it, and the gun fired.

On cross examination the appellant testified that before he fired the deceased also cut him three times in the back, and once on the hand.

Though he had owned the gun about a month, he did not know the gun had a safety on it.

In rebuttal Mildred Hand testified that she examined the deceased after he was shot, and he had no weapon, but she did find forty-five cents in his pocket.

█ Counsel for appellant argues that the lower court erred in refusing appellant's requested charges, affirmative in nature, and in denying his motion for a new trial because of the insufficiency of the State's evidence.

**70**

The testimony of Mildred Hand, if believed by the jury under the required rule, was sufficient in its tendencies to establish the offense of manslaughter in the first degree. Furthermore, there was evidence before the jury, and the court, arising from her statements as to distances, and positions by reference to objects or people in the court room, which is not before us, nor deducible from the record. The same situation is present in the testimony of Safronia Kelley wherein she "indicated" the position of the gun at the time the appellant fired.

In this state of the record there is no basis upon which we could rationally say that the evidence presented by the State did not arise to the degree required to justify the refusal of the affirmative charges, and the denial of the motion for a new trial.

Further, the record shows, as to the refused charges, that they were not endorsed, nor signed, by the trial judge.

█ Counsel for appellant argues that by setting up the failure of the trial judge to endorse and sign the charges as grounds for his motion for a new trial, the matter is brought before us for review.

This contention is without merit. So far as the record shows, the failure to endorse and sign the charges was a mere inadvertence on the part of the trial judge. The grounds of the motion for a new trial assert that the judge failed to endorse the charges, not that he refused to do so. Under such circumstances the inadvertence of the trial judge must be called to his attention if the party claiming injury seeks to benefit thereby. Barnewall v. Murrell, 108 Ala. 366, 18 So. 831. Further, even if there be a positive refusal on the part of the trial judge to endorse charges, an exception to such action must be duly reserved to invoke review. Kiker v. State, 233 Ala. 448, 172 So. 290.

Affirmed.