(80 South. 107)

RUTLAND et al. v. EMANUEL. (1 Div. 21.)

(Supreme Court of Alabama. June 27, 1918. Rehearing Denied Nov. 14, 1918.)

1. WILLS ⊕⇒542(2) — CONSTRUCTION — "AND."

Under will devising property to a son for life only, "but if he should die leaving a wife and child or children then his wife shall have the use * * * of the same during her life only, * * * but if he should die leaving neither wife nor child nor children then" all of such property shall go as he may direct, although son was survived by his wife only, she took a life estate; the word "and" in the phrase "wife and child or children" being used in the sense of "or."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, And.]

2. WILLS ⊕⇒439 — CONSTRUCTION — INTENT.

In construing will, the only appropriate function of the court is to ascertain and give effect to the intention of the testatrix, provided that is consistent with public policy and not offensive to the law.

3. WILLS ⊕⇒461 — CONSTRUCTION — "AND" —"OR."

In ascertaining and giving effect to intention of testatrix, it is permissible in cases justifying the process, and without resorting to speculation or surmise, to read "and" as "or," and vice versa.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Or.]

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. WILLS ⬯441—CONSTRUCTION. IN GENERAL.**

In construing a will, in ascertaining the intention of the testator, the court should put itself as near as may be done in the light of the record in the circumstances of the testator and from a position so advantaged read and expound the instrument.

**5. WILLS ⬯470—CONSTRUING AS A WHOLE.**

In construing a particular item of a will, the court will view and consider the whole instrument.

**6. WILLS ⬯614(6) — INTEREST DEVISED — LIFE ESTATE.**

Under will devising property to a son for life only, "but if he should die leaving a wife and child or children then his said wife shall have," etc., the son took a life estate.

**7. WILLS ⬯689—ESTATE IN REMAINDER—POWER OF APPOINTMENT.**

Will devising property to a son for life, "but if he should die leaving neither a wife nor child nor children then" it shall go as he may will or direct, *held* to confer on the son a power of appointment of an estate in remainder to members of class subject to contingency that neither wife nor child survived him.

**8. APPEAL AND ERROR ⬯843(2)—QUESTIONS NOT NECESSARY TO DECISION—REVIEW.**

Since decision in ejectment suit that defendant has a life estate determines her right to possession for life, the decision of other questions that may be of interest after the termination of her life estate would involve the pronouncement of judicial dictum.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Statutory ejectment by Hunter Rutland and others against Mamie R. Emanuel. Judgment for defendant, and plaintiffs appeal. Affirmed.

Gregory L. & H. H. Smith, of Mobile, for appellants.

Stevens, McCorvey & McLeod, John E. Mitchell, and Harry T. Smith & Caffey, all of Mobile, for appellee.

McCLELLAN, J. Statutory ejectment, instituted by Hunter Rutland and others (appellants) to recover business property in Mobile. Mamie R. Emanuel (appellee) is the sole defendant. The parties on both sides claim under the will of Isabella H. Emanuel, deceased. The plaintiffs are grandchildren of Isabella H. Emanuel, children of her deceased daughters. The defendant is the widow of Edward Emanuel, a son of Isabella H. Emanuel, deceased. On the 6th of June, 1890, Isabella H. Emanuel executed the will in question, along with a "codicil" of even date qualifying the eighth item of the will. Isabella H. Emanuel died on September 27, 1890, owning the fee in the property sought to be recovered in this action of statutory ejectment. At the time Isabella H. Emanuel executed this will (June 6, 1890). her son Edward Emanuel was unmarried. In 1894 he married the defendant, approximately four years after the execution by his mother of her will and after her death the same year. Edward died on the 15th day of February, 1917, leaving a widow, the defendant, and no children. No children were ever born to him.

The will of Isabella H. Emanuel, deceased, contains twelve items, and the addenda to the eighth item, called a "codicil." That particular item, with the "codicil," will be later reproduced in this opinion. The other items may be outlined as follows: Item 1 provided executors of the will. Item 2 stipulated for the payment of debts. Item 3 made devises and bequests to the testatrix's daughter, Mary E. Barnwell. Item 4 gave real property to the children of testatrix's deceased daughter (testatrix's grandchildren) Eveline E. Murrell "who may be [might be] living at my [testatrix's] death"; and, also, "to Effie and Mary B. Murrell" [grandchildren of testatrix] certain real property "while they remain unmarried"; and providing further in that item as follows:

"Should one marry, then this store to belong to the one unmarried. Should both marry, then the three sisters, Effie and Mary B. Murrell, and Isabel Shields to possess such store jointly. I also give to Effie and Mary Murrell" certain other real property.

Items 5 and 9 make provisions for the children of testatrix's deceased daughter, Fanny E. Rutland, devising certain real property, in item 5, and, in item 9, certain stocks in lieu of the real property described in item 5 if testatrix effected a sale of the real estate. Item 6 devised certain real property to testatrix's daughter Josephine E. McCartney. Item 7 made bequests and devises to testatrix's daughter Mrs. Virginia E. Mitchell. Item 8 will be quoted below. Item 10 devised to testatrix's daughters Mesdames Barnwell, Mitchell, and McCartney certain business property in Mobile. Item 11 reads:

"All of the remainder of my property, real, personal or mixed, of which I may die possessed, and which I have not herein specifically devised, it is my will, and I give and bequeath to all of my children living at my death, share and share alike."

Item 12 reads:

"I hereby specially enjoin upon each and all my heirs that they shall not use, any of them, my bequests to them for the payment of any debts whatsoever contracted by them previous to the inheritance by them of their bequests."

The particular item under review, the eighth, along with the "codicil," are in these words:

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Eighth. I give, devise and bequeath to my son Edward Emanuel the following described property in the city of Mobile, state of Alabama, to wit, the store on west side of Commerce St. now occupied by Michael & Lyons, situated between St. Michael & St. Louis Sts., being No. 39; also the building on the N. E. Cor. of Royal & St. Michael Sts., in which I have heretofore owned a three-quarters interest with the estate of Lyon, but have purchased the remaining one-fourth interest from the estate of Lyon, and now give the entire property to my son Edward, said building now occupied by various parties; also the two-story brick building situated on the N. E. Cor. of Govt. & Royal Sts., now occupied by Kosminsky, also a small building No. 47 South Royal, next to Kosminsky's also the three-story brick building No. 10 St. Michael St.

"To have hold and enjoy by my said son Edward Emanuel the use, benefits and profits of said property above bequeathed, during and for his life only; but if he should die leaving a wife AND child or children, then his said wife shall have and enjoy the use, benefits and profits of the same; during her life only, and at her death it shall go to my son's child or children, if any be living, forever, but if my son should die. But if he should die leaving neither a wife, nor child nor children, then it is my will that all of said property shall go to his sister or sisters, nephew, or nephews, niece or nieces, as he may will or direct, forever.

"It is my will and I so direct that my executors herein named, or whomsoever may become my executor or administrator shall become, and they are hereby constituted and appointed trustee or trustees for all of this property herein devised and bequeathed to my said son Edward Emanuel; and it shall be his or their duty to manage, control, and take charge of said property, renting or leasing it, and the income and profits, after paying the taxes, insurance and other necessary expenses incident to the management of said property, to be by them paid to my said son Edward as my son shall wish or require.

"It is my will, and I so direct, that none of said property shall be sold during the life of my son, unless said trustees shall concur with my son in the opinion that a sale would be manifestly to the interest or advantage of my son; and in the event such a sale should be made, it is my will that said trustee or trustees shall join in the conveyance to the purchaser and that the purchase money shall be paid to the trusteee or trustees, and the amount so realized shall be by them in property to be held and owned by my son upon the same terms and conditions in every respect, both as to his estate therein, and as to the mode and manner of inheritance and descent, and as to whom it shall go after his death, as the property herein devised is held by and for him.

"And it is my will that unless the terms and conditions of such sale above set forth are faithfully complied with, then such sale or sales shall be void.

"Codicil.

"It is my desire that the provisions that my executors shall manage and control, rent and lease the property given to my son Edward shall be stricken out; and instead thereof;

that my said son shall himself have the control and management of his own property; except that the provisions in regard to the sale of said property and its disposition after his death, shall remain in full force as provided above."

[1-3] The controlling question submitted by this appeal is whether the trial court was justified in deciding that the defendant had a life estate in the property; and the correctness of this conclusion depends upon the propriety of substituting the word "or" for the word "and," in the above-quoted eighth item of the will, which copulative we have put (ante) in capitals in the sentence reading, "but if he shall die leaving a wife *and* child or children. * * *" In the circumstances here presented, the only appropriate function of this court is to ascertain and give effect to the intention of the testatrix; provided, of course, that is consistent with public policy and is not offensive to the laws. In performing this function, it is permissible, in cases justifying the process, to read "and" as "or," and vice versa. Drawing the conclusion from general observation, it has become accepted that in both speech and writing people are careless, at least in degree, in the use of the words "or" and "and." In Harris v. Parker, 41 Ala. 615, 616, this court, through the pen of one of its ablest judges, long since expressed this idea by approvingly quoting this statement from Jarman on Wills:

"It is obvious that these words [i. e., or; and] are often used, orally, without a due regard to their respective import; and it would not be difficult to adduce instances of the inaccuracy, even in written compositions of some note. It is not surprising, therefore, that this inaccuracy should have found its way into wills."

After citing numerous authorities having reference to the particular judicial function of the substitutionary rendering of these words in writings wherein one of them occurs, this court then said:

"We make so extended a citation of authorities upon this subject, because they prove and exemplify the looseness and confusion which prevail in the use of the conjunctions 'or' and 'and,' and the *freedom* with which the courts adopt the meaning *consistent with reason and intention.*" (Italics supplied.)

Among the citations referred to in Harris v. Parker, supra, is Janney v. Spring, 7 Gill (Md.) 197, 48 Am. Dec. 557, to which Judge Freeman has appended an exhaustive note. The learned annotators of Anno. Cases have also made valuable contributions to this general subject in Ann. Cas. 1913A, 1058–1064; 19 Ann. Cas. 922–925; Ann. Cas. 1917C, 306–308.

This court, in Harris v. Parker, supra, adopted for analogous use the thought and rule on the subject that had found high approval in texts and cases involving the construction of wills. If this court were now

otherwise doubtful, it would not be disposed to question the correctness of the indicated considerations and conclusions set down in Harris v. Parker, supra. And it may be noted at this point, in further support of the presently pertinent pronouncement of Harris v. Parker, that in Hilliard v. Binford, 10 Ala. 977, 996, 997, this court substituted, in effect, "or" for "and" in construing the act of 1812, notwithstanding the Legislature of this state had employed "and" where the North Carolina parent statute had used the word "or"; and so despite the pithily stated dissent of Justice Ormond, wherein he advanced some considerations that underlie phases of the argument for appellants on this occasion. The expressions of this court quoted from Harris v. Parker, which consists with the view prevailing in Hilliard v. Binford, as well as the conclusion to be deduced from the deliverances from other courts of high authority, confirm the correctness of these observations in Toothman v. Barrett, 14 W. Va. 301, 310:

"As a general rule, words unambiguous in themselves ought not to be changed on account of the unreasonable disposition of the property, which would result from the plain meaning of the words. If the courts took such liberties with unambiguous language used by the testator, they would in effect be making a will for the testator, because the will made by him was unreasonable. But the disjunctive 'or' and the copulative 'and' are often used in conversation without due regard to their respective meanings; and sometimes they are thus loosely used by respectable authors. The courts have therefore taken the liberty frequently of correcting this blunder, when it has occurred in wills; and this to an extent they would not think of doing in the correction of any other supposed blunder, where the words of the testator, in their ordinary and grammatical sense, were unambiguous."

[4] It is hardly necessary to add that, notwithstanding the words "and" and "or" are, when abstractly considered, unambiguous in their respective meanings, the judicial function of reading one of them as if the other had been used is not thereby restricted. The essential prerequisite to the exercise of the power to thus read them is that by so doing the "intention," consistent with "reason," of the testator, is given appropriate effect. Harris v. Parker, supra. To state the proposition conversely, the exercise of this judicial power, whereby "and" is read as "or," or vice versa, is to the end that the intention of the testator should not be deflected or defeated by the not uncommon fault of inaccuracy employing one of these words where the other would have contributed to the true expression of the testator's purpose. The appropriate exercise of this power presupposed the proper recognition of the established rules: (a) That the authority to so change such words is not an arbitrary power; and (b) that resort cannot be had to speculation, conjecture, or surmise, however rational a particular theory may seem to be. Sherrod v. Sherrod's Adm'rs, 38 Ala. 537; Park v. Powledge, 73 South. 483, 486, L. R. A. 1917C, 1001;[1] note, 48 Am. Dec. p. 565 et seq. In construing a will, in ascertaining the intention of the testator, the court should put itself, as near as may be done in the light of the record, in the circumstances of the testator (Castleberry v. Stringer, 176 Ala. 250, 255, 57 South. 849), and, from a position so advantaged, read and expound the instrument.

[5] As stated, the eighth is the particular item to be construed on this appeal. In discharging this function, the court will view and consider the whole instrument. The will may have been, doubtless was, drawn by one learned in the law. Nevertheless, the instrument presented here carries some indicia of the want of the care we are accustomed to expect in such solemn and important writings; especially in cases where, as here, an estate of large proportions is the subject of the owner's final consideration and disposition. In the first item of the instrument, providing for executors, there is evidence of prolixity and repetition of thought as well as the dubious use of the disjunctive "or," in the connection where it first occurs in that item. Another manifestation of the absence of the care to be expected is in the eighth item, itself, where there is a repetition of the phrase "but if my son should die." This may be "speculatively" accounted for on the theory the appellants suggest, that a copyist, behind the draftsman, may have omitted, in the process of reproduction, the rest of the sentence; but there is nothing to indicate that the original draft did not carry this incomplete phrase. There is therefore reasonable ground on which to rest the conclusion that this instrument is not, in all respects, of the class the courts refer to as the product of a skilled scrivener.

[6] The will manifests the testatrix's solicitude, not only for her children, but for her motherless grandchildren. She expressed in an unmistakable way, in the fourth item, her thought for those of Mrs. Murrell's daughters who did not marry—doubtless being moved to so provide by the fact that the unmarried would be dependent upon her or their own resources; but stipulating for equality if the two unmarried should marry. By the eighth item, Edward Emanuel took, in legal effect, a life estate, which terminated on February 15, 1917. His mother made provision for him different from that made for any of her children or grandchildren. The eighth item of the original will (apart from the "codicil") manifested a distrust of either his disposition or his capacity to be unrestrictedly intrusted with the property. Originally, she created a trusteeship for the property's management, but in the "codicil" she so modified those provisions of item 8 as to,

commit to him the "control and management of his own property," preserving, by way of express exception, other provisions of the eighth item, in these words:

"Except that the provisions in regard to the sale of said property *and its disposition* after his death, shall remain in full force as provided above." (Italics supplied.)

It was the clear purpose of the exception to preserve unaltered the disposition she had made of the property after Edward's death, after he had enjoyed its incomes and profits during his life. Edward was then (1890) unmarried. He then had no children. He married four years later, after his mother's death. The provisions she made in the eighth item were necessarily anticipatory, viz. that he might marry and that he might have children. Both the possible wife and the possible children were in her mind; and so with a view to their being beneficiaries of her bounty, after the death of Edward. This is obvious from the terms of the eighth item, even when read as written. In these circumstances, she undertook to provide for those who might be the wife and child or children of her son. Aside from the effect of the rendition of the conjunctive under consideration, it is apparent that the testatrix had in mind—whether she most aptly expressed it or not—the bestowal of a benefit during the life of the possible widow of her son; and that "at her (the son's widow) death" provision for the child or children of her son, "if any be living" at the death of her son's widow. A "literal" reading of this will in the particular it provides for a life estate to the possible widow prescribes, as a condition to the enjoyment thereof, that a child or children shall, also, survive the son. The immediately succeeding provision for the possible child or children of the son is made to depend upon the intervening life estate for the possible widow; and there is no positive provision otherwise for the possible child or children of the son. So, had a possible child "or" children survived the son and no wife survived, a "literal" rendering of the terms of the will would, in such circumstances, have excluded the surviving child or children from benefits under the will of the testatrix. In other words, according to a literal rendition, the devise to wife or child or children would depend upon the survival of both, a result that would unfavorably distinguish the possible child or children of Edward from the children of the deceased sisters of Edward, and that, notwithstanding the testatrix contemplated the possible offspring of Edward as the natural objects of her solicitude, even though it cannot be said that she knew to whom Edward would be married or what quality of child or children should be born of the union. These considerations suggest doubt, and inspire inquiry, with respect to

202 ALA.—18

the verity of such an intent—an intent that would hinge the favor of the possible afterborn grandchildren of the testatrix upon the mere fact that the son, their father, should leave a widow. There is no undue assumption in reading the will's literal effects upon possible circumstances that the testatrix anticipated, viz. that Edward would have a child or children of a marriage he might contract; and in the light of such effects to deduce or to measure the intention of the testatrix at the time she executed the instrument. If designation of the possible beneficiaries under the eighth item had been closed with the word "forever," next after the word "living," in the second paragraph of the item, a forceful factor in ascertaining the intention of this testatrix would have been denied us.

[7] The concluding provision of the second paragraph of the eighth item reads:

"But if he should die leaving neither a wife, nor child nor children, then it is my will that all of said property shall go to his sister or sisters, nephew, or nephews, niece or nieces, as he may will or direct, forever."

A power of appointment, of an estate in remainder to members of a class, was thereby conferred on Edward, subject, however, to the condition, the contingency, that neither wife nor child survived him. This expression of the testatrix's intent consists alone with the idea that she had thereinabove fixed the beneficiaries of the precedent estates in every contingency except the one defined as a condition to the exercise of the power of appointment, viz. the nonsurvival of neither wife nor child or children. If child or children had survived, the power of appointment could not have been exercised. If a wife survived—as in fact was the case—then the power of appointment could not be exercised. According appropriate effect to be indicated manifestations of the intent of the testatrix, interpreted in the light of the circumstances under which she entered upon the final task of disposing of her estate, and of the further fact that the face of instrument bears unmistakable evidence of inaccurate expression, our conclusion accords with that prevailing with the court below, viz. that "or" should be substituted for "and" in the provision reading:

"But if he should die leaving a wife AND [or] child or children, then his said wife shall have and enjoy the use, benefits and profits of the same, during her life only. * * *"

Wherefrom it results that the defendant (appellee) took a life estate under the eighth item of the will, and hence was and is entitled, during her life, to the possession of the property described in the eighth item of Isabella Emanuel's will.

The decisions of this court upon the concrete cases presented in Sherrod v. Sherrod's

Adm'rs, 38 Ala. 537, and Duncan v. De Yampert, 182 Ala. 528, 62 South. 673, are not authorities on the construction of Mrs. Emanuel's will, since both of those cases involved testamentary expressions radically different from those here under consideration. In those cases the courts were urged to supply, by construction, distinct omissions to meet contingencies with respect to which the testator had set down nothing to indicate a purpose to provide for the contingency the litigants sought to have read into the will. The general doctrine of the Sherrod Case is sound; but the application of that doctrine to the facts there presented affords no authority for a conclusion on the different state of facts with which this appeal is concerned.

[8] The foregoing conclusions determine the right of the defendant (appellee) to the possession of the property during her life, and result in the affirmance of the judgment under review. The decision in this action of statutory ejectment of any other question that may be of interest "after" the termination of the life estate of the defendant (appellee) would involve the pronouncement of judicial "dictum," which some might accept or act upon to their ultimate loss or disadvantage "if" other judges did not—when the questions were really presented for decisions—adopt the views prevailing with the present court.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.