ALMON, Justice.
The First National Bank of Birmingham and Lucian D. Gardner, as trustees under the will of Harold Sanson, filed suit against the First National Bank of Arizona seeking instructions from the trial court as to the disposition of the assets of the trust. Harold Sanson died in Birmingham, Alabama, in 1933. His will, after leaving a life estate in trust for his wife, established trusts for the benefit of his two children — Florence Sanson Cabaniss and Pierson R. Sanson. Both children were given a general power of appointment by will of the assets in their respective trusts. Pierson R. Sanson died in Arizona in 1975 leaving a will in which he appointed the assets in his trust to the First National Bank of Arizona, as trustee, for the benefit of his widow, Marijean Sanson, and his children of the marriage with her.
*1043 The pertinent provision of Harold San-son’s will is paragraph “THIRD (h):”
“Upon the death of either child of me entitled to share in said trust estate under the provisions and subsections (f) and (g) hereof the Trustees shall transfer and pay over the share of said trust estate at the time held in trust for such child, to such person or persons, in such manner and in such proportions as such child may by his or her last will and testament appoint and direct, provided, however, that any provision in the will of such child in order to be of any force and effect as an exercise of the power herein given to him or her shall specifically state therein that it is made for the purpose of exercising the power conferred upon him or her by this will.”
If Pierson Sanson failed to exercise his power of appointment by his will, Harold Sanson’s will provided further that the trust estate held for his benefit was to be distributed as follows: one-half to Pierson’s sister, Florence Sanson Cabaniss, or her descendants in equal shares per stirpes and the other one-half to Pierson Sanson’s descendants in equal shares per stirpes.
In 1943 Pierson executed a partial release of his power of appointment “. . . except only in favor of the wife of the undersigned, the lineal descendants of the undersigned and the lineal descendants other than the undersigned of the said Harold R. Sanson . . .” The release was executed by Pierson while he was living in California.
Pierson disposed (or attempted to dispose) by will dated June 24, 1960, of all property to which he had a power of appointment:
“THIRD: It is my intention hereby to dispose of all real and personal property which I have the' right to dispose of by Will, including any and all property as to which I may have a Power of Appointment.”
Pierson’s will went on to provide a life estate in trust for his wife, Marijean San-son, with the First National Bank of Arizona, Phoenix, as trustee.
“4. Upon the decease of my wife, the Trustee shall divide the remaining trust estate into equal shares as follows:
“One share for each child of mine of my marriage to Marijean Sanson. In the event any of my said children predecease me or my wife, then their share shall be set aside for the issue of said deceased child upon the principal of representation.”
One-half (V2) of the fund is to be distributed to each child when he or she becomes 21 and the remainder when he or she becomes 25. Between ages 21 and 25, each child shall have the power to appoint outright or in trust to Pierson’s descendants, other than the donee, to the donee’s spouse, or to the descendants of the donee. Prior to distribution but after the death of Marijean, the income of the trust shall go to the children of their marriage in equal shares.
On August 23,1962, Pierson undertook to remedy a possible defect in the will by executing a first codicil containing a specific reference to the power of appointment contained in his father’s will. Thereafter, on January 24, 1967, Pierson executed a second codicil, which substituted a $5,000.00 bequest to Jeanne S. Hill, Pierson’s daughter by his first wife, for a $1,000.00 bequest contained in the original will. The two codicils, in full, are as follows:
“I, PIERSON R. SANSON, do hereby make, publish and declare this my First Codicil to my Last Will and Testament, which Last Will bears the date of June 24, 1960.
“FIRST: I hereby revoke Paragraph THIRD of my Last Will and Testament.
“SECOND: I hereby amend my said Last Will and Testament by adding the following Paragraph THIRD:
“THIRD: It is my intention hereby and herewith in this my Last Will and Testament to dispose of all property which I have the right to dispose of by will, including any and all property as to which I may have a power of appointment, including büt by this reference not limited thereto:
“(a) The power of appointment given me pursuant to the Last Will and Testa- *1044 merit of my father, HAROLD R. SAN-SON, dated October 24, 1933, and by the execution of this instrument I hereby exercise the power conferred upon me by my father’s said Last Will and Testament; and
“(b) The power of appointment given me pursuant to that certain Trust Agreement dated April 16, 1932, between HAROLD R. SANSON as Donor and THE FIRST NATIONAL BANK OF BIRMINGHAM, ALABAMA, as Trustee, and by execution of this instrument I hereby exercise the power conferred upon me by said Trust Agreement.
“I hereby give, devise and bequeath all of said property subject to said powers of appointment, to FIRST NATIONAL BANK OF ARIZONA, PHOENIX, a national banking association, IN TRUST, HOWEVER, to be held, managed and distributed in the same manner, at the same time and to the same persons provided in Paragraph FIFTH and SIXTH of my Last Will and Testament.
“THIRD: As above revoked, amended and added to by this my First Codicil to my Last Will and Testament, I hereby ratify, confirm and re-publish my Last Will and Testament dated June 24,1960.”
“I, PIERSON R. SANSON, do hereby make, publish and declare this my Second Codicil to my Last Will and Testament, which Last Will bears the date of June 24, 1960.
“FIRST: I hereby revoke that portion of Paragraph FOURTH of my Last Will and Testament reading as follows:
“ ‘To my duaghter, JEANNE S. HILL, of Birmingham, Alabama, the sum of One Thousand Dollars ($1,000);’
“Second: I hereby substitute for said revoked portion of Paragraph FOURTH of my Last Will and Testament, the following bequest:
“To my daughter, JEANNE S. HILL, of Birmingham, Alabama, the sum of Five Thousand Dollars ($5,000);
“Third: As hereby revoked, amended and added to by this my Second Codicil to my Last Will and Testament, I hereby ratify, confirm and republish my Last Will and Testament dated June 24,1960.”
The will and two codicils were executed in Arizona, the domicile of Pierson Sanson at the time of his death.
The trial court held that while the first codicil did properly execute the power of appointment granted Pierson by his father’s will, the second codicil did not sufficiently nor adequately refer to the first codicil to cause it to be a part of the last will and testament, as ratified, confirmed, and republished by the second codicil. From this the court concluded that Pierson did not exercise the power of appointment created by his father’s will. The court further found that Pierson’s father’s will did not give Pierson the power to appoint or direct any part of the trust to any banking institution, or corporation, in trust or otherwise, including the appellant First National Bank of Arizona. As to the 1943 release, the court also concluded that, while the release was valid, Pierson was not empowered to circumscribe, enlarge, qualify, alter or amend, in any manner, the power of appointment, and that Pierson did not properly exercise the power of appointment as provided by the terms of the release. We reverse.
I. Conflict of Laws
The trial judge apparently applied Alabama law, though he did not state so specifically, in interpreting Pierson Sanson’s will. The appellants contend that Arizona law should have been applied; at trial they presented the testimony of an Arizona attorney who stated that in Arizona the first codicil would not have been revoked by failure to mention it specifically in the second codicil.
The specific issue with regard to Pierson’s will is whether he validly exercised the power of appointment given him in Harold Sanson’s will. Harold’s will is, without question, controlled by Alabama law, and the trust he established has its situs in Alabama. While we have not found an Alabama case specifically addressing this question, encyclopedae on the subject indicate that Alabama law applies.
*1045 “Although there is some authority holding that the execution of a power is governed by the law of the domicile of the donee of the power, it is generally held that an instrument executing a power is governed by the law of the jurisdiction which controls the effect of the instrument creating the power, and that questions as to the validity, sufficiency, construction, and operation of the execution of a power are to be determined by the law of the domicile of the donor of the power, unless the power was created in contemplation of the law of some other jurisdiction applying to its exercise.” 72 Corpus Juris Secundum, Powers, § 44.
See also 62 Am.Jur.2d, Powers, §§ 29 & 30; 95 C.J.S. Wills § 587e.
Harold’s will did not contemplate the law of another jurisdiction to be applied in determining whether the power of appointment was properly exercised. Therefore, Alabama law shall be applied to the question.
No issue was made at trial of what law should be applied to Pierson’s 1943 release. The release, like the exercise of the power of appointment, relates directly to the power given in Harold’s will. We, therefore, believe Alabama law should also be applied to the validity of and compliance with the release.
II. Power Granted in Harold’s Will
Harold’s will provided Pierson with the power to appoint “. . .to such person or persons in such manner and in such proportions as such child may by his . . last will and testament appoint and direct. . ” The trial court held Harold’s will did not give Pierson the power to appoint in trust with a corporation as trustee.
The rule offered in Corpus Juris Secun-dum is contra:
“As a general rule, the donee of a power of appointment can appoint such an estate or interest only as is authorized by the instrument creating the power, and not a greater or lesser one. If, however, there is no restriction as to the estate or interest to be raised by the execution of the power, or if the matter is expressly left to the discretion of the donee, he may appoint any estate or interest which the donor of the power could have created or transferred.

“Appointments in trust. Under a power of appointment, either general or special, containing no restriction as to the nature of the estate to be raised, the donee is not limited to an appointment of the legal estate, but may execute the power by an appointment in trust for the objects of the power, except where it appears, either expressly or impliedly, from the instrument creating the power that the donor intended the appointees to take, not in trust, but absolutely. . . ”
72 C.J.S. Powers § 24d (1951).
See also 62 Am.Jur.2d, Powers, §§ 70 & 71. Moreover, there is authority saying that the power to appoint to any “person” includes the authority to appoint to a corporation. 72 C.J.S. Powers § 24b. However, whether Pierson could appoint to a corporation is not at issue. The First National Bank of Arizona is merely the trustee, not the beneficiary.
The case of In re Hart’s Will, 262 App.Div. 190, 28 N.Y.S.2d 781 (1941), specifically addressed interpretation of the following clause:
“. . . from and immediately after the death of my said nephew, then to grant, convey, assign and pay over the corpus or principal of the trust estate from which my said nephew was in his lifetime entitled to receive the income to such person or persons and in such manner and in such shares as he shall by his Last Will and Testament in writing appoint in fee simple absolutely.” (Emphasis added.) 28 N.Y.S.2d at 783.
The court held that this clause allowed creation of a trust. “The phrase, ‘in such manner,’ has been held to refer to the character of the estate which the donee may appoint, and connotes positive permission to the donee to create trusts.” 28 N.Y.S.2d at 783. See also Slayton v. Fitch Home, 293 Mass. 574, 200 N.E. 357 (1936).
*1046 We believe that Harold’s will gave Pierson the power to appoint in fee, and that such a power necessarily includes the power to appoint a lesser estate, including the formation of a trust.
III. Codicils
Harold’s will required Pierson to specifically state in his will that he is exercising the power of appointment conferred upon him. Pierson failed to do so specifically, but corrected the defect in his First Codicil. Later, in his Second Codicil he ratified, confirmed and republished his Last Will and Testament dated June 24, 1960, but did not mention his First Codicil. The trial court held that by not making reference to his First Codicil, he effectively revoked it.
In Alabama we have the rule based on statute that the writing of a second will revokes the first will, unless the former is referred to and preserved by the subsequent, or unless it is clear that the second will was intended as a codicil to be read together with the will. Bruce v. Sierra, 175 Ala. 517, 57 So. 709 (1912); Kohlenberg v. Shaw, 198 Ala. 571, 73 So. 932 (1917); Wheat v. Wheat, 236 Ala. 52, 181 So. 243 (1938); McKissack v. Ashurst, 220 Ala. 576, 126 So. 636 (1930). Bruce v. Sierra, supra, based this rule on § 6174 of the Code of 1907, now Tit. 61, § 26, Code of Alabama 1940, Recompiled 1958, which states that a will can be revoked “. by some other will in writing . . . No similar statute exists with regard to codicils, and we know of no Alabama case extending the rule to codicils. The purpose of a codicil is to explain, add to, or subtract from the provisions of the will. Hitchcock’s Heirs v. U. S. Bank of Penn., 7 Ala. 386 (1845).
“It is annexed to the will, and in law the will and codicils — if there be more than one — constitute but one instrument.” Id. at 437.
In Pierson’s will he attempted to exercise his power of appointment. Realizing he had not done so properly, he executed his First Codicil to correct the error. His Second Codicil changed the bequest to his daughter by prior marriage, whose grandmother- — Pierson’s mother — had left a $400,000 trust fund to her benefit, from $1,000 to $5,000, without making any reference to his power of appointment. We do not believe his failure to make reference to his First Codicil evidenced his intent to revoke his executed power of appointment, something he had previously attempted to do by will, but rather, when he republished his will in his Second Codicil, he intended to republish his First Codicil as a part of that will.
“. . . There is a distinction between an intermediate will and an intermediate codicil in this respect, and where the testator by a codicil confirms his will, the will, together with all codicils, is ordinarily taken to have been confirmed, although specific mention of intervening codicils is not made. However, the question of whether intermediate codicils are revived or revoked is, in the last analysis, a matter of the testator’s intention as deduced from all the surrounding circumstances, and the courts will give effect to the testator’s intention expressed by apt words to revoke any codicil already made, and to set up the original will unaffected by any codicil. A mere reference to the date of the original will is no indication of the intention to deprive all instruments other than the original will itself of any force; in'fact such a reference to a will does not effect a revocation of the antecedent codicils, but is a ratification of the will as modified by the codicils.” 95 C.J.S. Wills § 303d(2) (1957).
IV. Release
In 1943 Pierson Sanson released his power of appointment . . except only in favor of the wife of the undersigned, the lineal descendants of the undersigned and the lineal descendants other than the undersigned of the said Harold R. Sanson . . .” (Emphasis added.) Ap-pellees argue that the release created a nonexclusive special power of appointment — meaning that Pierson could not exclude any of the class that he created, nor *1047 include persons outside that class — and that his appointment is void for not being in compliance with his release; e. g., Pierson’s daughter by his first wife is not included. Appellants, on the other hand, contend that the release is irrelevant because the proper execution of the power depends only on Harold’s will, or in the alternative, that the release created an exclusive special power of appointment, which was properly exercised. We believe the release is valid and must be considered, but that it created an exclusive power, rather than a nonexclusive power.
Tit. 47, § 89(1), Code of Alabama 1940, Recompiled 1958, provides as follows:
“89(1). Release of powers. — Any power which is exercisable by deed, by will, by deed or will, or otherwise, whether general or special, other than a power in trust which is imperative, is releasable, either with or without consideration, by written instrument signed by the grantee and delivered as hereinafter provided.
“A power which is releasable may be released with respect to the whole or any part of the property subject to such power and may also be released in such manner as to reduce or limit the persons or objects, or classes of persons or objects, in whose favor such power would otherwise be exercisable. No release of a power shall be deemed to make imperative a power which was not imperative prior to such release, unless the instrument of release expressly so provides.
“Such release may be delivered to any of the following: . . .(b) Any trustee of the property to which the power relates. .
“This section shall apply to releases hereafter delivered, and also to releases delivered heretofore but on or after July first, nineteen hundred forty-two. (1945, p. 64, appvd. June 9, 1945.)”
While we find no case interpreting Tit. 47, § 89(1), the statute makes the release, without question, valid.
The argument that the release created a nonexclusive special power of appointment, rather than an exclusive power, turns on the word “and” in the above quoted clause of the release. However, the fact that “and” was used rather than “or” is not dispositive.
“There is no word in the English language more difficult to define, or ‘of more equivocal import; than the’ monosyllable or. — Burrell’s Law Dictionary, ‘Or.’ Jarman, in his work on Wills, in reference to the meaning of this word, says: ‘But by far the most numerous class of cases, exhibiting the change of a testator’s words, are those in which the disjunctive or has been changed into the copulative and, and vice versa. It is obvious that these words are often used, orally, without a due regard to their respective import; and it would not be difficult to adduce instances of the inaccuracy, even in written compositions of some note. It is not surprising, therefore, that this inaccuracy should have found its way into wills.’ — 1 Jarman on Wills, 420, m. p. 443. It has often been held, both in reference to deeds and wills, for the purpose of effectuating the intention, that ‘or’ meant ‘and,’ and the instrument was read as if it contained ‘and’ instead of ‘or’. [Citations omitted.] We make so extended a citation of authorities upon this subject, because they prove and exemplify the looseness and confusion which prevail in the use of the conjunctions ‘or’ and ‘and,’ and the freedom with which the courts adopt the meaning consistent with reason and intention.” Harris v. Parker, 41 Ala. 604, 615-616 (1868).
Rutland v. Emanuel, 202 Ala. 269, 272, 80 So. 107, 110 (1918) adds the following:
“. . . The appropriate exercise of this power presupposed the proper recognition of the established rules: (a) That the authority to so change such words is not an arbitrary power; and (b) that resort cannot be had to speculation, conjecture, or surmise, however rational a particular theory may seem to be. [Citations omitted.] In construing a will, in ascertaining the intention of the testator, the court should put itself, as near as may be done in the light of the record, in the *1048 circumstances of the testator [Citation omitted.], and, from a position so advantaged, read and expound the instrument.”
Correspondence between Pierson Sanson and the officers and trustees of The First National Bank of Birmingham prior to the release indicate that the purpose of the release was to avoid the consequences of § 811(f) of the 1939 Internal Revenue Code, as amended by the 1942 Revenue Act, now part of 26 U.S.C., § 2041. The pertinent part of 26 U.S.C., § 2041, reads:
“. . . If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—
“(i) such partial release occurred before November 1, 1951, or . . ..”
The exercise of a general power of appointment, after the 1942 Revenue Act, would cause the property under the power to be included in the donee-decedent’s gross estate, whereas the exercise of a special power of appointment would not. For a case applying this statute, see Ellis v. U. S., 280 F.Supp. 786 (1968).
The statute (26 U.S.C., § 2041(b)) defines a general power of appointment ás a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, with certain exceptions not here relevant. The avoidance of the tax consequence of 26 U.S.C., § 2041, does not depend on whether the special power created by partial release of the general power is exclusive or nonexclusive. From a donee’s standpoint, the usual desire would be to place the least restriction on his power of appointment necessary to do the job, i. e., the creation of an exclusive power rather than a nonexclusive power.
The manner in which Pierson exercised his power of appointment supports the application of this proposition. Pierson executed the release, not Harold. Credence should be given to the way he interpreted his own document.
Based on the limited purpose of the release and the fact Pierson is both executor of the release and the party affected by the release, we believe his intent was to create an exclusive special power. Consequently, “and” should be read as “or.”
We, therefore, hold that the decision of the trial court is in error and it is hereby reversed and remanded for appropriate transfer of the trust in accordance with this decision.
REVERSED AND REMANDED.
BLOODWORTH, FAULKNER and EM-BRY, JJ., and SIMMONS, Retired Circuit Judge, sitting by designation of the C. J., concur.