# Brown v. The State.

*Indictment for Living in Adultery.*

1. *"Living in adultery" &c., defined.*—The statute punishing adultery is directed against a state or condition of cohabitation, the parties intend to continue so long as they may choose, as distinguished from a single or occasional act of illicit sexual intercourse. If for a single day, they live together in adultery, intending a continuance of the connection, the offense is committed, though the cohabitation may be broken of or interrupted from any cause.

2. *Same; evidence of illicit intercourse.*—The fact of illicit intercourse, from its nature, can very rarely be directly proved, and must

in the very great majority of cases be inferred from circumstances, the weight and conclusiveness of which vary according to the situation of the parties, the habits of society, and other incidental circumstances.

3. *Same; evidence of intent.*—When it is material to show the intent with which the particular act or acts charged was done, evidence of another similar act or other similar acts, though in itself, or of themselves constituting a criminal offense, may be given.

4. *Crime committed partly in one county, and partly in another.* - Cr. Code, § 3719 in reference to crimes committed partly in one county and partly in another, has no application to an offense, such as living in adultery, which is single, indivisible, and not consisting of several parts.

5. *Special charge to jury; explanation.*—When a special charge is given, the court *ex mero motu*, if apprehensive that it may unduly influence the jury, or that it may mislead them, has the power, and it may become a duty, to explain its true interpretation and meaning.

APPEAL from Baldwin Circuit Court.

Tried before Hon. W. S. ANDERSON.

The defendant Nicholas Brown, was tried and convicted of living in a state of adultery or fornication with Caroline Barado. The evidence of one Pose, for the State, was to the effect that the defendant and Caroline Barado, accompanied by two children of the latter, left the wharf of the witness in Baldwin county, sailing in the direction of Mobile, in a boat of the defendant, which had a cabin on it. Defendant's motion to exclude, and objections to this evidence were overruled.

The next witness for the State, testified that at Point Clear, in Baldwin county, he saw the defendant and Mrs. Barado. The latter came to the house of the witness, followed by the defendant, who on coming up, said to Mrs. Barado, "lets go," and on her answering that she did not know what she was going to do, asked the witness to take her on the beach. The witness declined to do so, saying he wanted no trouble in his house. Thereupon, Mrs. Barado sent a boy upon the beach to see if her husband was in sight, and upon his reporting that he was not, she left with the defendant upon his boat.

The defendant objected to, and moved to exclude this evidence. His objections and motions were overruled. The State showed further by another witness, against the objections of the defendant, that the defendant and Caro-

[Brown v. The State.]

line Barado were seen by the witness at Daphne, in Baldwin county. The time was late in the evening, and a storm or squall was approaching. The witness suggested that Mrs. Barado should stop at his house, but the defendant objected, saying that he could make her comfortable in the cabin of his boat. The next morning, this witness saw in the cabin of the boat, four persons; a man, a woman, and apparently, two children. The State then proved by the sheriff of Mobile county and his deputy, that Mrs. Barado was arrested in a house on Little Dauphin Island in Mobile county, and the defendant was arrested near by. That the house had but one bed in it, upon which were two pillows, and that on being permitted to get clothing to take with them, each prisoner took clothes from the same box, which was under the bed. Objections were made and overruled to each part of this evidence. Thereupon, the State having rested its case, the attorney of the defendant moved separately, to exclude all the evidence, and to discharge the defendant, both which motions were refused.

The defendant in his own behalf, and that of Mrs. Barado, testified to matters tending to explain the circumstances shown by witnesses for the State. The evidence being in, the court in its general charge to the jury, stated that "If the defendant and Caroline Barado agreed in this county to go to Mobile county and live in a state of adultery, and went off from Point Clear under the circumstances described by the witnesses in this case, and then went together to Mobile county and lived in the state of adultery, and, such living together was a consumation of the previous agreement, he would be guilty." The court refused to charge the jury upon request of the defendant, as follows: "Before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with the defendants guilt, but that it is wholly inconsistent with every other rational conclusion, and unless the jury are so convinced by the evidence of defendants guilt that they would each venture to act upon that decision in matters of the highest concern and importance to his own interest, then they must find the defendant not guilty."

CHAS. L. BROMBERG JR., for appellant.

WM. C. FITTS, Attorney-General, *contra*.

BRICKELL, C. J.—Adultery, "the voluntary sexual intercourse of a married person with one not the husband or wife," is not the offense, but an element or constituent of the offense, the statute renders indictable.— Cr. Code, § 4012. As has been often explained, the statute is directed against a state or condition of cohabitation, the parties intend to continue so long as they may choose, as distinguished from a single, or occasional act of illicit sexual intercourse. This state or condition may well be assumed in a single day, if the parties so design, as any other state or condition may be so assumed. If for a single day, they live together in adultery, intending a continuance of the connection, the offense is committed, though the cohabitation may be broken off, or interrupted, from any cause whatever.— *Hall v. State*, 53 Ala. 463; *Lawson v. State*, 20 Ala. 65; *Collins v. State*, 14 Ala. 608; *State v. Glaze*, 9 Ala. 283. It is but seldom the offense, in its entirety, is capable of direct, positive proof; it is generally to be inferred from facts and circumstances, leading to it as a necessary conclusion. In *Lawson v. State, supra*, it was said by Goldthwaite, J.: "The fact of illicit intercourse, is one which from its nature can very rarely be directly proved, and must in the very great majority of cases be inferred from circumstances, the weight and conclusiveness of which vary according to the situation of the parties, the habits of society, and other incidental circumstances. Facts apparently trivial and innocent in themselves, sometimes derive importance from their connection and combination with other facts."

The fact that the defendant and the woman with her two children came to Baldwin county together, in the boat of the defendant—that she went to the house of Grass, and that a few minutes after her arrival, the defendant went to the house, and the conversation there occurring between them; the request made by the defendant of Grass to take the woman to the beach and his response; the sending out on the beach to see if the husband of the woman could be seen; and when it was ascertained that he could not, their departure for the boat of defendant, and leaving in the boat with the two children. The proposal of O'Neil that the woman should

stop at his house ; the answer of defendant in her presence, that there was a cabin on the boat in which she could be comfortable; that on the next morning the boat was at anchor a short distance from the wharf, and in the cabin there were apparent the heads of four persons, a man, a woman and two children. The manner and condition in which the defendant and the woman were living, and their conduct, when arrested in Mobile, to answer the accusation, were facts and circumstances not without relevancy, and proper for the consideration of the jury, in determining whether the state and condition to which the statute is directed, had been assumed. Their sufficiency ; their weight and conclusiveness ; it was the province of the jury to determine under proper instructions from the court.

The immediate tendency of the evidence touching the condition in which the parties were living, and their conduct, when arrested in Mobile, was to show unlawful cohabitation in Mobile, a distinct, substantive offense, independent of that charged in the accusation ; and yet not inconsistent with, or negativing that charge. For it may well be, that at different periods of time, the relation or condition to which the statute refers may exist in two or more counties. It is true, as is insisted in the argument of counsel, that the general principle is, that evidence of a distinct, substantive offense, is not admissible in support of another offense. The rule has its exceptions, and of these a recognized exception is, that when it is material to show the intent with which the particular act or acts charged was done, evidence of another or similar act, or other similar acts, though in itself, or of themselves constituting a criminal offense, may be given.—*Gassenheimer v. State*, 52 Ala. 313. The state and condition in which the parties were living in Mobile, it is apparent, was assumed in but a brief space of time after the occurrence of the circumstances in Baldwin county. If subsequent to these occurrences the parties are found living in the state and condition they indicate, an inference may arise, that though there was a change in locality, the state and condition was continuous. In *Com. v. Nichols*, 114 Mass. 285, it was ruled, that acts of adultery between the defendant and the same woman, near the time of the adultery for which he was indicted, though committed in another county, were

proper to be proven in support of the indictment. In
*Lawson v. State, supra,* it was held admissible to show
that subsequent to the finding of the indictment, the par-
ties were living in adultery, if the time intervening was
not of such length as to repel all reasonable inference
that there was between the two conditions continuity or
connection. We find no error in the rulings of the court
below as to the admissibility of evidence.

The substance of the instruction to the jury, to which
an exception was reserved, is, that if the defendant and
the woman agreed to go to Mobile county and there live
in adultery, and in pursuance of the agreement, they
did go to Mobile and live in that condition, there could
be a conviction under the accusation. As we gather from
the argument of counsel, the instruction was supposed
to be authorized by the statute (Cr. Code, § 3719), which
declares that "when an offense is committed partly in
one county and partly in another, or the acts, or effects
thereof, constituting, or requisite to the consummation
of the offense, occur in two or more counties, the juris-
diction is in either county." It was a rule of the com-
mon law, that when an offense was constituted by a
series of acts, a part of which was done in one county,
and a part in another, there could be no prosecution in
either, unless so much was done in the one as would con-
stitute a complete offense.—1 Bish. Cr. Pr., § 54. Ex-
amples of the application of the rule will be found in 1
Chit. Cr. Law, 177; 5 Bac. Abr. Title Indictment, sub-
division F. The controlling purpose of the present stat-
ute was the abrogation of the rule of the common law.
A single, indivisible offense, not consisting of several
parts, is not within the operation of the statute. If there
was no more in Baldwin county than the agreement of
the parties to live in adultery in Mobile county, however
immoral the agreement was, an indictable offense was
not committed.—*Miles v. State,* 58 Ala. 390 ; *Shannon v.
Com.,* 14 Penn. St., 226; *Smith v. Com.,* 54 Penn. St.,
209. The offense the statute denounces may have been
contemplated, but it rested in contemplation merely.
There was not, and could not be elsewhere than in Mo-
bile county an attempt to commit it. An *attempt* to com-
mit a crime may be indictable ; but the mere intent to
commit it, unaccompanied by any act in furtherance of
the intent, can not be matter of indictment. The living

[Holmes v. The State.]

together in adultery, the state or condition against which the statute is directed, in its nature and essence, is a single, indivisible offense, which can not be severed. It commences when the state or condition is assumed, and not until it is assumed; and it is indictable only when and where the state or condition is actually and intentionally entered upon and assumed. There was error in the giving of this instruction.

The instruction requested by the defendant was extracted literally from an instruction which was declared at the last term to assert a correct legal proposition.—*Burton v. State*, 18 So. Rep. 284. When analyzed and interpreted, the instruction means no more, than that the guilt of the accused must be fully proved—as it is usually expressed, proved beyond a reasonable doubt; and that this degree of proof is not reached, unless all reasonable supposition of innocence is excluded. When in its present form the instruction may be given, the court, *ex mero motu*, if apprehensive that it may unduly influence the jury, or that it may mislead them, has the power, and it may become a duty, to explain its true interpretation and meaning.—*McKleroy v. State*, 77 Ala. 95.

For the errors pointed out, the judgment must be reversed and the cause remanded; the defendan will remain in custody until discharged by due course of law.