(131 So. 571)

## POWELL et al. v. PEARSON et al.

### 1 Div. 611.

Supreme Court of Alabama.
Dec. 18, 1930.

Pillans, Cowley & Gresham, Inge, Stallworth & Inge, and Stevens, McCorvey, McLeod, Goode & Turner, all of Mobile, for appellants Powell and Staples.

Smith & Johnston, of Mobile, for appellants Lewis T. Rutland and others.

Harry T. Smith & Caffey and Thornton & Frazer, all of Mobile, for appellees.

BOULDIN, J.

The bill was filed by Minnie Macartney Pearson for the sale of certain real estate in Mobile for division among tenants in common, and, as incident thereto, the determination of the title and interests of the several claimants, some of whom were brought in by amendment.

Without incumbering our decision with a detailed statement of the interests claimed by the several parties and how derived, it is sufficient to say they all depend on the construction of two wills.

One of these is the will of Isabella H. Emanuel, deceased. This will is set out in full on the former appeal in this cause, where the same was construed by the full court. Powell v. Pearson, 220 Ala. 247, 125 So. 39.

The property here involved was devised by the testatrix to her son Edward Emanuel under the terms of the eighth paragraph of the will as modified by the codicil.

In an earlier decision, Rutland v. Emanuel, 202 Ala. 269, 80 So. 107, this court had declared that Edward Emanuel and his surviving wife took successive life estates; that the power of appointment by will conferred on him by his mother's will failed because the condition for its exercise had never arisen.

The question now at issue is whether the reversion after the death of the surviving wife was left undisposed of and passed by descent on the death of his mother to her heirs at law, or passed under the eleventh paragraph, the residuary clause of her will, to her children living at her death?

The decision of the majority on former appeal is well expressed in the sole headnote to the decision, 220 Ala. 247, and in the words of the opinion, page 260, 125 So. 39, 50, adopted from the decision of the trial court, viz.: " 'That the fee in said property was not devised by the will, but remained in the testa-

trix, and at her death in 1890 passed to her then heirs at law, under the law of Alabama.' "

We are asked to reconsider this announcement.

The briefs of counsel, showing much research, have been carefully considered.

We undertake here no review and analysis of authorities to determine whether the rule is stated too broadly in Johnson v. Holifield, 82 Ala. 126, 2 So. 753, saying: "Where a specific devise of real property is not valid and effectual, either from incapacity of the devisee to take, or from a lapse by his death during the life-time of the testator, or from the non-happening of some event or contingency on which the devise takes effect, the estate so undisposed of descends to the heir at law, notwithstanding there may be a residuary devise."

■ All admit that, where the property is specifically devised in such manner as to indicate the testator has therein made a final disposition so far as he intends to make disposition of same, it is not within a general residuary clause limited to property not specifically devised, although by subsequent events it may happen that the devise fail and the property comes back into the estate. Van Kleeck v. Reformed Dutch Church, 6 Paige (N. Y.) 600.

■ This is but to say the intention of the testator gathered from the will as a whole shall be given effect, if lawful.

The entire structure of Mrs. Emanuel's will shows a division of her estate among the natural objects of her bounty, viz. three living daughters, the children of two deceased daughters, and one son, Edward Emanuel.

The limitations and trusts attending the devise to the son are in the nature of safeguards.

What the testatrix desired should become of this property after the termination of the life estates is indicated by the class named as appointees in these words: "But if he should die leaving neither a wife, nor child or children, then it is my will that all of said property shall go to his sister or sisters, nephew or nephews, niece or nieces, as he may will or direct, forever."

The appointees are not limited to sisters living at the mother's death, nor to their descendants, to the exclusion of descendants of his sisters then deceased. To the contrary, her son was given entire freedom to choose between them all so long as he confined himself within the natural objects of his bounty, his heirs at law, and at the same time the heirs of the testatrix.

The general scheme of division running through the will suggests no purpose to favor daughters then living over the children of her deceased daughters, as regards property specially devised to the son for his life, then to his wife for life, with remainder to his children, if any, and with power of appointment by will if neither wife nor child survives him.

■ Without further discussion, we adhere to the views expressed on former opinion to the effect that the will made no other or further disposition of this property; that the contingent remainder limited to his unborn child or children having failed for want of one to take, and the power of appointment having never come into operation and effect, the reversion must be disposed of as in cases of intestacy.

The second will, whose construction is involved, is that of Mary E. Barnewall, a daughter and one of the devisees of Mrs. Emanuel.

The inquiry involved here is: Did the undivided reversionary interest of Mrs. Barnewall in the property in suit, coming to her as heir at law on the death of her mother, pass under the residuary clause of Mrs. Barnewall's will to Christ Church in Mobile, or did she die intestate as to this property?

Mrs. Barnewall's will was considered by this court in 1895. Barnewall v. Murrell, 108 Ala. 366, 18 So. 831.

That case involved a contest of the will. The major question was whether the instrument, composed of numerous sheets, with many blank spaces, and changes made in the original draft, constituted a completed unified testamentary act, or was an incomplete document, not intended to be final, but subject to change after execution, if not actually so changed.

In a full carefully reasoned opinion by Chief Justice Brickell, the structure and contents of the entire will were quite fully set forth on pages 371–374 of 108 Ala., 18 So. 831, 834.

Adopting that outline of the will as a whole, we here set out only the provisions whose construction is immediately involved as they appear in the present record, viz.:

"Page 1 * * * I give to my husband William Barnewall for his sole use and benefit during his natural life, nothing to be used for the payment of debts, contracted before his marriage with me, everything that I own now or may own hereafter, without any reservation whatever.

"(Here occurs one blank line.)

"At his death, or during his life should he so desire, I will that my property personal

and real, should be disposed of in the following manner, that is, I give everything not specified below to the Rector, Wardens and Vestry of Christ Church Mobile, Alabama, in trust for said Church, to be controlled and managed by them for

"Page 2.

"the use and benefit of said Church, my wish and my desire being that said property should be used as an endowment fund.

"The said property to the Rector, Wardens and Vestry of Christ Church for said Church consists of (balance of line left blank) (part of line left blank) Feet on Water front (balance of line blank) ½ undivided interest in Squares 319–320 Orange Grove, bounded by Earle St. Jackson St., etc.

"No. 101–103 (about 8 spaces blank) Commerce Street. (balance of line left blank)

"Dwelling house and lot No. 251 Government St.,

"This latter I will to be kept in perpetuity, never to be sold, never to be called by any other than my father's name, be the use what it may.

"The furniture of said house not specified below to be part and parcel of said house.

"(Part of line left blank) Bonds Valued at (balance of line left blank)

"(Part of line left blank) Securities Valued at (balance of line left blank)

"(Here occur 8 blank lines.)

"Page 3, written on the back of second sheet.

"Fearing there may be a misunderstanding of what I have given to different ones, I write here what I want left in the house to go with it as part and parcel thereof, viz."

■ Appellants insist that the special listing or description of the property given to the church controls the general description in the residuary clause, in effect, that such listing is restrictive as well as descriptive.

By such construction the will has no residuary clause; the all-inclusive expression, "I give everything not specified below," is given no field of operation, in effect is stricken from the will.

It then stands as a will of special devises and bequests only, a case of partial intestacy.

This was not the construction given the instrument in Barnewall v. Murrell, 108 Ala. 388, 18 So. 831, 841, supra, where it was said: "The great, controlling purpose of the testatrix was not to die intestate,—was to dispose of all her property by this instrument. This is manifested by the universality of the

gift to the husband for life; by the gift on his death of the residuum to the church; by the minute specific bequests to her relatives and friends, of pictures and other like articles, intended, doubtless, as mementos, descending to articles of wearing apparel. In the presence of this purpose and of these gifts, there can be no reason to apprehend that she may have intended other or further bequests."

Dealing more directly with the question now raised, it was further said (108 Ala. 386, 387, 18 So. 831, 840): "The blank spaces in the body of this instrument are readily accounted for, if account was necessary, or now within the scope of legitimate inquiry. The instrument is composed of numerous paragraphs, obviously written, not continuously, but at different times in the process of its composition, until its completion. Until its completion, it was deliberative and reflective, not expressive of the final thought and will of the testatrix. When the gift of the residuum to the church was first written, the thought of the testatrix may have been that she would describe all the real estate of which the residuum consisted, as it may have been that she would declare the value of the bonds and securities of which it consisted. But when the writing was completed, it must have occurred to her that, as she had made no specific gift or devise of real estate, all her real estate would fall into the residuum, and that of consequence the filling of the blank was useless, as all would pass, without or with an accurate description of it. And so in reference to the bonds and securities of which she had made but a single bequest to another. It must have occurred to her that all, whether their value was or was not expressed, with the exception of the one otherwise bequeathed, would fall into the residuum."

It is suggested the above was dictum and an unwarranted surmise. A reading of that decision discloses that a decision on that point was quite pertinent to the main question then being considered.

The rule of construction or presumption against the disinheritance of the next of kin is invoked. The comparative force of such presumption as opposed to the presumption against partial intestacy is debated. Broadly speaking, these presumptions, their comparative force, and their application at all, turns much upon the nature and terms of the will under consideration.

Certainly the rule against disherison can have little force where the will makes specific devises and bequests to the next of kin, and expressly devises the greater part of the estate to other beneficiaries.

Moreover, this will expressly discloses such purpose in the following provision:

"I earnestly hope that none of my relations will take offense at this will, or express discontent therewith.

"All of the property deeded herein would have belonged to my daughter Isabell, had she lived, none of them would have benefited by it; and inasmuch as they all have their full share of my father's estate, from whence it all has come to me, I have done no wrong to them. Let the children of my sisters Eveline and Fannie, remember that for years, from 1860 or 1865, their Mothers received $1200.00 or more yearly. To what would that have amounted in 1890?"

The devise of the life estate expressly covers "everything I own now or may own hereafter, without any reservation whatever."

The devise to the church following immediately deals "with my property, personal and real," giving to the church "everything not specified below."

The testatrix had in mind after-acquired property, as shown by the immediate context. Necessarily, there could be no intent to list such property in the will.

The will bears further evidence that the property listed as "said property" in the same paragraph with the residuary clause does not include all the property given to Christ's Church.

Page 15 sets forth a gift of the silver, jewelry, and diamonds of the testatrix to be used in adorning the sanctuary and altar and in beautifying the memorial chalice to her daughter, Isabel Kennedy, which "should be jeweled so as to make it as magnificent as a Chalice can be."

Page 16 gives to the church certain pictures of Bible themes and personages.

Thus it appears that, after the gift to the husband for life, the will begins and ends with gifts to the church.

The testatrix, writing the will herself, inserted the residuary clause first, giving to Christ Church "everything not specified below."

In our opinion it has the same meaning as if "everything not specified above" had been inserted after the specific gifts, including those to the church.

We find, therefore, no reason to depart from Barnewall v. Murrell, supra, whether regarded as dictum or not.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.