(132 So. 605)

### FIELDS v. STATE.

8 Div. 84.

Court of Appeals of Alabama.

Feb. 24, 1931.

John H. Peach, of Sheffield, and A. H. Carmichael, of Tuscumbia, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

RICE, J.

Appellant, a negro man, was convicted of the offense of miscegenation. That he is a negro, and that the woman with whom he is alleged to have committed the offense is a white person, is not disputed. It is not contended that the parties intermarried; the evidence tends solely to show that the parties did "live in adultery or fornication with each other."

In Jones v. State, 156 Ala. 175, 47 So. 100, 101, our Supreme Court had this to say: "With the exception of the racial feature, the constituent elements of the offense [miscegenation] are the same as in ordinary cases of adultery and fornication. The voluntary sexual intercourse by the man and woman with each other 'is not the offense, but an element or constituent of the offense, the statute renders indictable. As has been often explained, the statute is directed against a state or condition of cohabitation the parties intend to continue so long as they may choose, as distinguished from a single or occasional act of illicit sexual intercourse. This state or condition may well be assumed in a single day, if the parties so design, as any other state or condition may be so assumed. If for a single day they live together in adultery (or fornication), intending a continuance of the connection, the offense is committed, though the cohabitation may be broken off or interrupted from any cause whatever.'"

In the Jones Case, as in the case at bar, the issues were: Did the parties voluntarily engage in sexual intercourse; did they place themselves in a state or condition of cohabitation which they intended to continue so long as they might choose?

In this case two police officers went, late at night, to the house of the appellant. It was dark. They knocked, but were not admitted. After waiting a few minutes, the

194

officers forced an entrance. In appellant's bedroom they found appellant and the woman, both up and fully dressed, except that the woman had on no shoes. "The bed was not freshly made. It seemed to be kind of ruffled." There were two pieces of luggage in the room containing apparel which the woman admitted to be her own. When asked why he did not answer the knock on his door, appellant told the officers he was afraid.

These two officers saw appellant and the woman alone in appellant's car, late at night, a short time prior to the finding of the couple in the appellant's house.

Other witnesses testified that the parties had been out together in appellant's car on several other occasions, but that they were always accompanied by either the woman's father, or mother or cousins, one or all.

This, in brief, is the state's case. On cross-examination of state's witnesses, it was developed that the woman had been for some time in extremely bad health, and had been in the hospital for treatment; that at the time her physical condition was bad, her body was swollen, she was not able to wear shoes more than a few minutes at a time, and she went in her stocking feet; that her feet were swollen and she had sores on her legs; and that she suffered from a female disorder that caused her to menstruate almost constantly except when under treatment of doctors. It was further developed that two of the state's witnesses were in the car with the parties on the night of the arrest, and that, when they got out of the car, the woman told one of the witnesses that she was going to appellant's house to get some clothes; that the woman had left the hospital because of the expense and had gone to a boarding house; that this boarding house was a block from where witnesses lived and where they had left the car in which appellant and the woman were riding on the night of the arrest.

■■ Standing alone, the finding of the appellant and the woman in appellant's house at night, under the circumstances testified to by the arresting officers, is not, we hold, sufficient upon which to base a finding that the parties were guilty of the crime charged. To justify such a finding, it must have been assumed that the parties had engaged in sexual intercourse and that they intended to continue a state of cohabitation so long as they might choose. The problem of proving an adulterous act has been the subject of much comment in the adjudicated cases. It is generally recognized that positive proof is next to impossible, and for this reason it is held that its proof may rest upon circumstances. "An attempt to commit a crime may be indictable; but the mere intent to commit it, unaccompanied by any act in furtherance of the intent, cannot be matter of indictment," —Brown v. State, 108 Ala. 18, 18 So. 811, 813 (indictment for living in adultery). The circumstances here disclose at most an opportunity.

Evidence for the defendant, which was without dispute, showed the pitiable repulsive physical condition of the woman; that she was transported from her country home to the hospital, in town by the appellant at the request of her father; that, after leaving the woman at the hospital, appellant carried her surplus luggage to his house, this also at the request of the father; that the father, being unable to bear the expense, later engaged a boarding house for his daughter and had appellant take her there, and subsequently had him drive her to and from the hospital. It further appears that on the night of the arrest appellant carried the woman to his house; that it was cold and the woman asked to go into the house and warm; that appellant lit an oil stove to allow the woman to warm, which she was doing when the officers came upon the scene. The father of the woman testified to a friendship with appellant which had existed for more than 25 years, during which favors had been exchanged by the negro and himself. He testified that all that was done by the appellant had been done at his request and as personal favors to him in and about the treatment of his daughter, who had been ill for many years.

During the trial, the state's attorney, by his examination of witnesses, gave emphasis to the race feature. Certain remarks in his argument were a direct appeal to race prejudice with a suggestion of an abuse of a white woman by the negro. Objections by defendant to such remarks were sustained, and the remarks were perfunctorily excluded.

We are constrained to hold, after a careful consideration of the whole record, that appellant's motion for a new trial should have been granted. The great weight of the evidence is opposed to the verdict. The surrounding atmosphere was not conducive to a fair and impartial trial for one of appellant's race accused of such an offense.

The judgment is reversed, and the cause remanded.

Reversed and remanded.