IN THE MATTER OF THE ESTATE OF MINNIE G. BUMSTED, DECEASED.

Argued January 17, 1949—Decided February 21, 1949.

*Mr. Emory C. Risley* argued the cause for the appellant and respondent, the Trustees of Phillips Academy *(Messrs. Stryker, Tams & Horner,* attorneys).

*Mr. Raymond A. Coleman* argued the cause for the appellants and respondents, James J. Reardon and Commercial Trust Company of New Jersey, surviving trustee of the trust for James A. Noble and of the trust for James J. Reardon under the last will and testament and codicil thereto of Minnie G. Bumsted, deceased *(Messrs. Anderson, Rugge & Coleman,* attorneys).

*Mr. Max Mehler* argued the cause for the appellant and respondent, Guaranty Trust Company of New York Administrator c. t. a. of the estate of William L. Casey, deceased *(Messrs. Gross, Blumberg, Mehler & Goldberger,* attorneys).

*Mr. Edward O'Mara* argued the cause for the appellant and respondent, First National Bank of Jersey City, executor of the last will and testament of Pierre F. Cook, deceased *(Mr. John I. O'Neill* and *Messrs. O'Mara, Conway & Schumann,* attorneys).

The opinion of the court was delivered by

BURLING, J. These are four separate appeals arising out of the same cause which were consolidated for argument in this Court. No. A—207 is the appeal of The Trustees of Phillips Academy, the residuary legatee under the will of Minnie G. Bumsted, deceased; No. A—209 is the appeal of James J. Reardon and Commercial Trust Company of New York, surviving Trustees under the said Will; No. A—210 is the appeal of the

Guaranty Trust Company of New York, administrator c. t. a. of the Estate of William L. Casey, deceased, a general legatee under the said will, and No. A—211 is the appeal of the First National Bank of Jersey City, it being the executor of the will of Pierre F. Cook who was the administrator and next of kin of Marie C. Cook, another deceased general legatee thereof. In each appeal the remaining named parties in this paragraph are respondents.

The matter originated in the Prerogative Court when James J. Reardon and the Commercial Trust Company of New York, as surviving Executors and Trustees under the will and codicil of Minnie G. Bumsted, deceased, filed a petition for a decree of distribution of the balances of corpora of certain trusts created by the will and hereinafter referred to. The statement of questions involved requires a construction of four trust clauses thereof and the residuary clause.

The testatrix, Minnie G. Bumsted, who died on or about October 6, 1930, left an estate approximated to be $1,500,000.00 in value at the time of her death. In her will and codicil, she bequeathed pecuniary legacies in the amount of $476,000.00 to 22 beneficiaries. She also provided for the establishment of 4 trusts in the total designated principal amount of $435,000.00, the income of which was directed to be paid to specified beneficiaries for life. The principal amounts of these respective trusts were as follows:

a—Clara H. Stoddard Trust—$10,000.00
b—Minnie A. Dimse Trust—$200,000.00
c—James A. Noble Trust—$25,000.00
d—James J. Reardon Trust—$200,000.00

The clauses creating each of the above trusts provide that upon the death of the respective life tenants the principal of that trust shall pass into and form a part of the residuary estate. The residuary clause reads as follows:

"Fifteenth All the rest, residue and remainder of my estate, both real and personal, of every nature and kind, and wheresoever situate, of which I shall die seized and possessed, or in any manner entitled to, including the trust funds hereinbefore set apart for the benefit of my sister-in-law. Clara H. Stoddard and Minnie A. Dimse, and said

James A. Noble and James J. Reardon, from and after their respective deaths, after the payment of said inheritance taxes, I give, devise and bequeath to the corporation, by whatever name or corporate title the same may be known, conducting the educational institution known as Phillips Academy, at Andover, Massachusetts, for the general purposes of such institution, to have and to hold the same unto the said corporation, its successors and assigns forever."

As a result of the nationwide depression of the early 1930's there was a substantial depreciation in the values of the assets of the estate, making it apparent early in the course of the administration of the estate that liquidation of the estate would probably produce insufficient money to pay in full the money legacies and trust funds under the will and codicil. Accordingly the executors informed the beneficiaries of the condition of the estate and submitted to them, before undertaking to liquidate the estate, the advisability of the beneficiaries entering into an agreement for the postponement of the payment of legacies and trust funds under the will and codicil and for the postponement of liquidation of the estate in order that the beneficiaries might have the benefit of any appreciation in value of the assets of the estate during such period of postponement.

The beneficiaries thereupon entered into such an agreement on April 6, 1932 which provided, among other things, for the postponement to April 6, 1934 of the payment of the money legacies and trust funds. The tenth paragraph of the agreement read as follows:

"10. If and when the real and personal estate of Minnie G. Bumsted, deceased, is liquidated sufficient funds (including income in hand) are not available after payment of all proper charges to pay in full the principal of the various legacies and trust funds, the same shall be paid proportionately without reference to the interest paid under this agreement; provided, however, that the executors may from time to time as and when funds become available make proportionate payments on account of the various legacies and trust funds."

When the postponed distribution date arrived the assets of the estate were still insufficient. On that date the parties entered into a further agreement relating to the distribution of the estate. That agreement provided for the sale of the assets of the estate, with the exception of certain specified securities

and, after providing that one of the legatees, The Woodlawn Cemetery, should be paid in full, stated:

"3. (g) The remaining net proceeds of sale of said personal property assets shall, by the executors, be paid to the various legatees, under said will and codicil, including the trustees of the trust fund legacies and (excluding the residuary legatee and devisee and excluding the legatee The Woodlawn Cemetery) proportionately, in the ratios that the principal amounts of said respective legacies, including trust fund legacies, bear to the total of all said legacies, including trust fund legacies, upon execution and delivery to the executors of duly executed proper refunding bonds and releases; subject, however, to any legatee's share being charged with such amount as may be necessary under paragraph 4 (d) hereof in cases where such legatee may take over from any other legatee any fractional share or shares of the stocks to be distributed in kind under paragraph 4 of this agreement."

A separate paragraph provided for the distribution of the specified securities in kind pro rata among all the legatees excepting the Woodlawn Cemetery.

Under this agreement only The Woodlawn Cemetery was paid in full. The remaining legatees, including the trustees of the respective trust funds received approximately 36% of the amount provided under the will and codicil. The residuary legatee received nothing.

Due to the death on August 5, 1943 of Clara H. Stoddard, and on November 21, 1943 of Minnie A. Dimse, two of the life tenants, those trusts were terminated on the respective dates of death. At the time the present petition was filed the trustees had in their hands the sum of $2259.46 corpus and $134.06 income in the Stoddard Trust and $62,400.05 corpus and $5,370.92 income in the Dimse Trust. The petition sought a decree of distribution of these balances.

The residuary legatee contended in the Prerogative Court and again before this court that the balances are distributable to it by virtue of the direction in the paragraphs of the will establishing the trusts that upon the death of the particular life tenant the principal of that trust fund "shall pass into and form a part of my residuary estate" and the complementary injunction of the residuary clause that the residue shall include "the trust funds hereinbefore set apart". The general legatees

and the beneficiaries of the remaining two trusts took the position that since they have not been paid in full they are now entitled to share in the trust funds that have fallen in. The Vice Ordinary concurred in this view and ordered the assets in question applied to the payment of existing deficits arising in the general legatees and remaining trusts proportionately in the ratios that the original principal amounts of the said legacies and trust funds bear to original amounts of all the said legacies. The decree further adjudged that the residuary legatee has no right, title or interest in or to the assets in question.

The effect of this decree is that the residuary legatee is foreclosed from ever taking, as the principles laid down will govern the distribution of the remaining two trusts and the principal amounts thereof are less than the balance owing the general legatees who are, in effect, substituted as remaindermen.

 The purpose of the construction of a will is the ascertainment of the intent of the testator. Within the limits prescribed by law, it is within the province of every person of testamentary capacity to dispose of his property by will in the manner deemed best by him and it has long been the policy of the courts to further his intent. So long as the intention be clear and manifest within the four corners of the will, there is no reason for judicial construction.

 The problem of construction, therefore, only arises when the intent of the testator is not clearly expressed and is doubtful or ambiguous. In such a case, while the trend of the law is to be bound lightly by precedents, *Hewitt v. Green*, 77 N. J. E. 345, 354 *(Ch. 1910); Clapp, Wills and Administration in N. J. (1937) sec.* 48, *p.* 88; 2 *Page, Wills, 3d Ed.* 1941, *Sec.* 917, @ *p.* 800; it is the duty of the court to give effect to the will by means of an interpretation of its language and for such a task the courts have evolved rules of construction. These rules are of aid to the interpretation process when viewed in their proper perspective of subordinate to and in furtherance of the intent of the testator. *Post v. Herbert's Executors,* 27 N. J. E. 540, 543 *(E. & A.* 1876). Full

effect will be given to such rules if the will, when read in the light of surrounding circumstances does not show an intention which is different from that which would be reached by an application of the rules. The testator is presumed to have framed his will in view of the rules of construction and any variance must be clearly indicated. *Supp v. Second National Bank & Trust Co.*, 98 *N. J. E.* 242, 246 *(Ch. 1925); 2 Page, Wills, 3d Ed. (1941) Sec.* 916, *p.* 793.

The problem here has arisen because the depreciation of the estate and its liquidation has produced insufficient funds to completely carry out all of the provisions of the will. It thereby becomes necessary to apply the construction process in order to dispose of the available assets according to the intent of the testatrix. *In re Fisler,* 133 *N. J. E.* 421 *(E. & A.* 1942*); 2 Page, Wills, 3d Ed. (1941) Sec.* 916, *p.* 792 *et seq.*

Unless a contrary intent is manifest by the testator, the residuary estate is the first to abate, even to the point of exhaustion. *Shreve v. Shreve,* 17 *N. J. E.* 487 *(E. & A.* 1864*); Clapp, Wills and Administration in N. J. (1937) Sec.* 107, *p.* 173; 4 *Page, Wills, 3d Ed. (1941) Sec.* 1497, *p.* 324. Under this well established principle the residuary legatee is not entitled to share in the proceeds of the fallen in life estates and the decree of the Prerogative Court must be affirmed unless something be shown to make the rule inoperative.

The residuary legatee contends that such a factor exists. It alleges that the statement in the residuary clause "including the trust funds hereinbefore set apart" has the effect of removing the corpora of the said funds from the residuary clause and converts them into specific legacies. In support of this contention it cites, *Johnson v. Poulson,* 32 *N. J. E.* 390, 396 *(E. & A.* 1880*)* which states as follows:

"Another reason relied on by the appellants against the lien of the legacies on the farm was, that by the residuary clause it is specifically devised. The testator's language is, 'I devise and bequeath to my sons all the rest and residue of my property, including the farm &c.' It was contended that, being specifically named, the farm was separated from the residue, distinct from and no part of it. The doctrine that lands and particular articles or kinds of personal property specially named in a residuary clause are not part of the residue, is supported by the authorities cited: *Shreve v. Shreve,* 2 *Stock.* 390; *Clark v. Butler,* 1 *Mer.* 304; *Bethune v. Kennedy,* 1 *Myl. & Cr.* 114."

An examination of the *Poulson case* reveals that the above statement in the opinion is not necessary to the decision and is therefore dictum. Moreover an examination of the only New Jersey authority cited therein, *Shreve v. Shreve,* 10 *N. J. E.* 385, 390 *(Ch.* 1855) discloses that case to have been reversed by the Court of Errors and Appeals. *Shreve v. Shreve,* 17 *W. J. E.* 487 *(E. & A.* 1864). We conclude that, while we express no opinion as to the soundness of the judgment in *Johnson v. Poulson, supra,* the opinion furnishes no precedent in the matter before us. Further, the case was correctly distinguished on the facts from the instant case by the learned Vice Ordinary.

*Koehl v. Haase,* 125 *N. J. E.* 567 *(Ch.* 1938) cites and purports to follow *Johnson v. Poulson, supra.* The case was reversed by the Court of Errors and Appeals *sub. nom. Haase v. Koehl,* 126 *N. J. E.* 222 *(E. & A.* 1939). An analysis of the decision shows that the reliance on *Johnson v. Poulson, supra,* by the Court of Chancery was dictum, as the dispositive question concerned the composition of the assets of a specific life estate, not the nature of the residuary clause. The reversal in the Court of Errors and Appeals was predicated upon an erroneous construction by the Court of Chancery of the clauses of the will creating the life estate. The Court of Errors and Appeals opinion neither construed the residuary clause nor cited *Johnson v. Poulson, supra,* although the case was brought to the attention of the court by the respondent.

 Where a clause purports to pass the residue of testator's estate and attempts to enumerate some or all of the different items in such residue by way of example, the clause passes the entire residue and is not limited to the items named. While there is some authority to the contrary, the view of the majority of common law jurisdictions supports this rule. 3 *Page, Wills,* 3d *Ed.* 1941, *Sec.* 989, *p.* 84. Clauses giving the residue of testator's estate "consisting in part of notes" or "including my farm" have been held in other jurisdictions to be purely residuary and not specific. *Kemp v. Dandison,* 169 *Mich.* 578, 135 *N. W.* 270 *(Sup. Ct. of Michigan* 1912); *Bristol v. Stump,* 136 *Md.* 236, 110 *A.* 470 *(Court of Appeals*

*of Maryland* 1920*); Jordan v. Ringstaff,* 213 *Ala.* 512, 105 *So.* 641 *(Sup. Court of Alabama* 1925*).* This rule finds support in cases in the following jurisdictions: (Great Britain) *Goods of Jupp. (*1891*) Prob.* 300; *Gover v. Davis,* 29 *Beav.* 222, 54 *Eng. Reprint* 612 *(*1860*);* (Alabama) *Powell v. Pearson,* 222 *Ala.* 199, 131 *So.* 571 *(Sup. Ct. of Alabama* 1930*); Jordan v. Ringstaff, supra;* (Arkansas) *Orr v. Griffith,* 188 *Ark.* 428, 65 *S. W.* 2*d* 556 *(Sup. Ct. of Arkansas* 1933*);* (Maryland) *Bristol v. Stump; supra;* (Michigan) *Kemp v. Dandison, supra;* (New York) *Miner's Will,* 146 *N. Y.* 121, 40 *N. E.* 788 *(Court of Appeals N. Y.* 1895*);* 57 *Am.Jur. "Wills" Secs.* 1420, 1421; *Anno.* 128 *A. L. R.* 722 *et seq.*

■ The fact that articles are enumerated in the residuary clause does not of itself determine whether they are given specifically or whether they are part of the residue and are therefore general gifts. This is a matter of the intention of the testator. *Taylor v. Taylor,* 6 *Sim.* 246, 58 *Eng. Reprint* 586 *(High Court of Chancery* 1833*); Methodist Episcopal Church v. Thomas,* 145 *S. W.* 2*d* 157, *Kansas City Court of Appeals, Missouri,* 1940; 4 *Page, Wills,* 3*d Edition (*1941*) Sec.* 1393, *p.* 111. The Court of Chancery has adhered to these principles. *Hudson County National Bank v. Pressler,* 136 *N. J. E.* 490 *(Ch.* 1945*); Sanborn v. Sanborn,* 14 *N. J. Misc.* 260 *(Ch.* 1936*).*

■ The insertion in the residuary clause of the phrase "including the trust funds hereinbefore set apart" was not, of itself, operative to make the said trust funds specific. When coupled with the admonition in the clauses creating the trusts that the corpus was to become part of the residuary estate, we are of the opinion that the language of the residuary clause was merely an enumeration of something that the testatrix regarded as already in the residue. Compare *Taylor v. Taylor, supra; Methodist Episcopal Church v. Thomas, supra.*

■ The testatrix intended the general legatees, including the *cestui que trustent,* to be preferred over the residuary legatee. This being so, the residuary legatee, in accordance with the principles heretofore discussed, must suffer an abate-

ment of its legacy before the other beneficiaries. This results in its exclusion from sharing in the distribution.

The residuary legatee has further propounded the proposition that the agreement of April 6, 1934, provides for the final liquidation of the estate and distribution of all the assets thereof. It is argued that a fair construction of that agreement leads to the conclusion that it provides for payment of the corpora of the trust funds to the residuary legatee in accordance with the construction contended for by it. However, we are of the opinion that this is not so. What the parties were attempting to do was not to effect a construction of the will so much as to provide for an allocation of the assets of the estate admittedly insufficient to carry out the will in full, and thereby place in the hands of the respective legatees some assets to be then disposed of according to the terms of the will.

Two paragraphs of the decree of distribution refer to the disposition of certain securities contained in the trust estates that have fallen in. The residuary legatee asserts these provisions are unsupported by the pleadings and proofs and are unnecessary. With this contention we do not concur. The petition demanded distribution of the assets of the trust estates and the Prerogative Court decreed that it be made to the general legatees. By virtue of the unequal proportion to be awarded to each beneficiary it becomes obvious that a sale of the assets must be made. The residuary legatee would have no interest in those assets unless the decree of the Prerogative Court should have been reversed on the main question, which fact is conceded by it. Therefore, there is no merit to the argument advanced by it.

The remaining questions involved relate to counsel fees. The Prerogative Court awarded a counsel fee of $15,000 to counsel for the First National Bank of Jersey City representing one of the deceased legatees. Although the cause is procedurally a petition for distribution, the matter is comparable to a bill in Chancery for construction, as the petition itself reveals. Upon an examination of the record in the cause we are of the opinion that the fee is excessive and should

be reduced to the sum of $10,000. The remaining counsel fees were proper and were correctly charged against the fund.

Since all the appeals were from the same decree and in order to make explicit the result, it is expressed in detail: In No. A207 the appellant specified three questions, the construction of the residuary clause, the sale of assets and the allowance of counsel fees. In that appeal the decree is affirmed on the merits and modified as to the allowance of counsel fees in accordance with this opinion and as so modified it is affirmed. In No. A209 the appellant specified only the question of counsel fees and in that appeal the decree is modified as to the allowance of counsel fees in accordance with this opinion and as so modified the decree is affirmed. In No. A210, the appellant specified only the question of counsel fees and in that appeal the decree is modified as to the allowance of counsel fees in accordance with this opinion and as so modified the decree is affirmed. In A211, the appellant specified only the question of counsel fees and in that appeal the decree is affirmed with respect to the issues thereby presented.

Nos. A–207, 209, 210:

*For modification:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*Opposed:* None.

No. A–211:

*For affirmance:* Chief Justice VANDERBILT and Justices CASE, HEHER, WACHENFELD, BURLING, and ACKERSON—6.

*For reversal:* None.